**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE EIGHTH CIRCUIT**

**No. 13-1996**

DANIEL RASKAS,

*Plaintiff-Appellee,*

v.

JOHNSON & JOHNSON, et al.,

*Defendants-Appellants.*

MARJIE LEVY,

*Plaintiff-Appellee,*

v.

PFIZER INC.,

*Defendant-Appellant.*

LESLIE YOFFIE,

*Plaintiff-Appellee,*

v.

BAYER HEALTHCARE, LLC,

*Defendant-Appellant.*

Appeal from the United States District Court
For the Eastern District of Missouri
(4:12-cv-02174-JCH)
(4:12-cv-02266-HEA)
(4:12-cv-02307-CDP)

**BRIEF FOR APPELLANTS**

Thomas C. Walsh
Dan H. Ball
Christopher J. Schmidt
BRYAN CAVE LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile: (314) 259-2020

Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Counsel for Johnson & Johnson and McNeil-PPC, Inc.*
*Defendants-Appellants*

Robyn E. Bladow
Shaun Paisley
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500

James P. Muehlberger
Douglas B. Maddock, Jr.
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri  64108
Telephone: (816) 474-6550
Facsimile:  (816) 421-5547

*Counsel for Pfizer Inc.*
*Defendant-Appellant*

Eugene A. Schoon
Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

Terry Lueckenhoff
FOX GALVIN, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
Telephone:  (314) 588-7000
Facsimile:  (314) 588-1965

*Counsel for Bayer Healthcare, LLC*
*Defendant-Appellant*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiffs Marjie Levy, Leslie Yoffie, and Daniel Raskas filed lawsuits in Missouri state court against defendants Pfizer, Bayer, and Johnson & Johnson and McNeil-PPC respectively, seeking actual damages, punitive damages, injunctive relief, and attorneys' fees on behalf of classes of Missouri consumers for alleged violations of the Missouri Merchandising Practices Act, but failing to quantify the monetary relief sought.  Defendants removed to federal court, describing how the amount in controversy exceeded the $5 million jurisdictional threshold under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  In their motions to remand, plaintiffs presented no evidence that the amount in controversy was less than the threshold.  The district court nevertheless remanded the lawsuits to state court, holding that defendants were required to devise a "formula" for calculating plaintiffs' classwide damages.

Because this appeal presents an important question about CAFA jurisdiction that has yet to be resolved by this Court, defendants request oral argument of fifteen minutes per side.  If in-person oral argument presents logistical problems—given both the short timeframe in which this Court has to issue a decision under 28 U.S.C. § 1453(c)(2) and the fact that the appeal will not yet be fully briefed before the last date for regularly-scheduled oral argument in the June session—defendants propose in the alternative that the argument be conducted via teleconference.

Appellate Case: 13-1996     Page: 3     Date Filed: 05/22/2013 Entry ID: 4038189

**DEFENDANTS' CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and 8th Circuit Rule 26.1A, counsel of record for Defendants certify to the best of their knowledge and belief as follows:

Defendant Pfizer Inc. has no parent companies, and there is no publicly-held corporation holding 10% or more of its stock.

Defendant McNeil-PPC, Inc. is a wholly owned subsidiary of Johnson & Johnson, a publicly-held corporation. Defendant Johnson & Johnson has no parent companies, and there is no publicly-held corporation holding 10% or more of its stock.

The parent companies of Defendant Bayer Healthcare, LLC are Bayer AG and Bayer Corporation. Bayer AG is a publicly-held corporation that owns 10% or more of Defendant Bayer Healthcare, LLC.

Appellate Case: 13-1996    Page: 4    Date Filed: 05/22/2013 Entry ID: 4038189

# TABLE OF CONTENTS

**<u>Page</u>**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ........... i

DEFENDANTS' CORPORATE DISCLOSURE STATEMENT .......................... ii

TABLE OF AUTHORITIES .................................................................. iv

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

STATEMENT OF THE CASE AND FACTS ........................................3

STANDARD OF REVIEW ...........................................................9

SUMMARY OF THE ARGUMENT ..................................................10

ARGUMENT ..............................................................................16

      A.     The District Court's Decision Misapplies This Circuit's Standards For CAFA Removal. ........................................16

      B.     The District Court's Decision Misapprehends The Amount "In Controversy" And Is At Odds With On-Point Decisions From Other Circuits. ........................................21

      C.     The District Court's Decision Contravenes CAFA's Statutory Purpose. ........................................27

      D.     As To Bayer, The District Court's Decision Violates Longstanding Authority By Permitting Plaintiff Yoffie To Narrow The Relief In Her Complaint Post-Removal.........................30

CONCLUSION ...........................................................................29

CERTIFICATE OF COMPLIANCE........................................................31

ADDENDUM ...................................................................... A-1

Appellate Case: 13-1996    Page: 5    Date Filed: 05/22/2013 Entry ID: 4038189

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amoche v. Guarantee Trust Life Ins. Co.*,
  556 F.3d 41 (1st Cir. 2009)...................................................................22

*AT&T Mobility LLC v. Concepcion*,
  131 S.Ct. 1740 (2011)........................................................................24

*Bell v. Hershey*,
  557 F.3d 953 (8th Cir. 2009) ...................................................... 9, 14, 15

*Bishop Clarkson Mem'l Hosp. v. Reserve Life Ins. Co.*,
  350 F.2d 1006 (8th Cir. 1965) .................................................................5

*Capitol Indem. Corp. v. Miles*,
  978 F.2d 437 (8th Cir. 1992) ..................................................................5

*Comcast Corp. v. Behrend*,
  --- S. Ct. ----, 2013 WL 1222646 (U.S. Mar. 27, 2013) ............................... 11, 17

*Federico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ..................................................................14

*Hargis v. Access Capital Funding, LLC*,
  674 F.3d 783 (8th Cir. 2012) ........................................... 2, 24, 26, 29

*Hartis v. Chicago Title Ins. Co.*,
  694 F.3d 935 (8th Cir. 2012) ..................................................... *passim*

*Lewis v. Verizon Commc'ns, Inc.*,
  2010 WL 2650363 (C.D. Cal. June 30, 2010).............................................. 20, 21

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) ..................................................... *passim*

*McPhail v. Deere & Co.*,
  529 F.3d 947 (10th Cir. 2008) ...................................................... 14, 25

*OnePoint Solutions, LLC v. Borchert*,
  486 F.3d 342 (8th Cir. 2007) ..................................................................5

Appellate Case: 13-1996    Page: 6    Date Filed: 05/22/2013 Entry ID: 4038189

**Page**

*Ongstad v. Piper Jaffray & Co.*,
    407 F. Supp. 2d 1085 (D.N.D. 2006)...................................................................22

*Rolwing v. Nestle Holdings, Inc.*,
    666 F.3d 1069 (8th Cir. 2012) ..............................................................................10

*Spivey v. Vertrue, Inc.*,
    2008 WL 961561 (S.D. Ill. Apr. 8, 2008)............................................................19

*Spivey v. Vertrue, Inc.*,
    528 F.3d 982 (7th Cir. 2008) ....................................................... *passim*

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938).................................................................... *passim*

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013)............................................... 2, 10, 13, 22, 23

*Thompson v. Apple, Inc.*,
    2011 WL 2671312 (W.D. Ark. July 8, 2011).....................................................22

*Westerfeld v. Indep. Processing*, LLC,
    621 F.3d 819 (8th Cir. 2010) ....................................................... 23, 24

## Statutes

28 U.S.C. § 1332(d) ..............................................................................................4, 9

28 U.S.C. § 1453(c) ..............................................................................................8, 9

Mo. Rev. Stat. § 510.265.1 ......................................................................................5

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................................6

## Other

S. Rep. No. 109-14, *reprinted in* 2005 U.S.C.C.A.N. 3 ................................ 9, 23, 24

Appellate Case: 13-1996   Page: 7   Date Filed: 05/22/2013 Entry ID: 4038189

## STATEMENT OF JURISDICTION

Defendants removed these cases to federal court pursuant to 28 U.S.C. §§ 1332(d), 1441(a), and 1453. *See* Apdx. at 24, 71, 115. In a March 26, 2013 order, the district court remanded the cases for lack of subject matter jurisdiction. Adden. at 1. Defendants timely filed a petition for leave to appeal the remand order pursuant to 28 U.S.C. § 1453(c) and Federal Rule of Appellate Procedure 5, which this Court granted on May 2, 2013.

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

(1)     Where plaintiffs conceded they were unaware of a way to calculate potential damages on a classwide basis, did the district court err in holding that defendants were required to propose a "formula" to calculate the aggregate damages in order to establish that the amount in controversy exceeds the jurisdictional minimum under CAFA?

- *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935 (8th Cir. 2012);

- *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008);

- *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010);

- *Standard Fire Ins. Co. v. Knowles* , 133 S. Ct. 1345 (2013).


(2)     As to Bayer, did the district court err by permitting plaintiff Yoffie to avoid federal jurisdiction by narrowing the relief sought in her complaint post-removal?

- *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938);

- *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012).

2

## STATEMENT OF THE CASE AND FACTS

### The Underlying Lawsuits

On October 22, 2012, Plaintiffs Marjie Levy, Leslie Yoffie, and Daniel Raskas (together, "plaintiffs"), all represented by the same counsel, filed three separate cases in Missouri state court, raising nearly identical allegations under the Missouri Merchandising Practices Act ("MMPA"). Plaintiff Levy filed a putative class action complaint against Pfizer, alleging that Pfizer had violated the MMPA and engaged in a civil conspiracy with unidentified third parties to deceive consumers into throwing away Advil after the expiration date printed on the packaging, even though the product allegedly lasted beyond that date. Apdx. at 32 ¶ 1. Levy alleges that she and other consumers had been injured "by virtue of having discarded [Advil] after its 'expiration date' and spending money to replace it." Apdx. at 51 ¶ 83. Based upon this theory, Levy seeks to certify a class of "[a]ll Missouri citizens who purchased Advil for personal, family, or household purposes and later discarded and replaced it." Apdx. at 47 ¶ 63. She seeks classwide compensatory damages, punitive damages, injunctive relief, and attorneys' fees. Apdx. at 52-53. Levy does not specify the monetary value of the relief she seeks in her Complaint.

Plaintiff Yoffie filed a putative class action lawsuit against Bayer, making nearly identical allegations about "Bayer Aspirin" or "Bayer Aspirin products,"

3

and asserting the same MMPA and civil conspiracy claims. Apdx. at 121 ¶ 1. She seeks to certify a class of Missouri citizens who purchased, and later discarded and replaced, Bayer Aspirin. Apdx. at 137 ¶ 66. Yoffie seeks the same types of relief as Levy. Apdx. at 142-43.

Plaintiff Raskas filed suit against Johnson & Johnson and McNeil-PPC, alleging that they, too, had violated the MMPA and engaged in a civil conspiracy related to the expiration dates printed on packages of Tylenol Cold Multi-Symptom solid medications. Apdx. at 79-80 ¶ 1. Asserting a nearly-identical theory of liability and injury as in *Levy* and *Yoffie*, Raskas seeks to certify a class of Missouri citizens who purchased, and later discarded and replaced, Tylenol Cold Multi-Symptom. Apdx. at 96 ¶ 69. Raskas seeks the same relief as Levy and Yoffie. Apdx. at 102-03.

## Removal Pleadings

Because in each of these lawsuits there was minimal diversity, at least 100 putative class members, and more than $5 million in dispute, defendants removed all three cases to the United States District Court for the Eastern District of Missouri pursuant to CAFA, 28 U.S.C. § 1332(d). In their removal papers, defendants presented data about the retail sales in Missouri of the products at issue. Pfizer presented evidence that, depending on which Advil product was being challenged (Levy's complaint did not specify), the amount of its retail sales during

4

the proposed class period ranged from $14 million to $26 million, the amount shipped to certain wholesale and distribution centers in Missouri ranged from $12 million to $22 million, and the amount sold in Missouri Wal-Mart stores alone ranged from $6.4 million to $12.6 million. Apdx. at 56, 59; Adden. at 30, 33. Bayer presented evidence that the estimated retail value of sales of Bayer Aspirin products (Yoffie's complaint was not limited to a particular type of Bayer Aspirin) in Missouri during the proposed class period was approximately $19.8 million. Adden. at 41-43 ¶ 5. And Johnson & Johnson and McNeil-PPC showed that the total retail sales of Tylenol Cold Multi-Symptom in Missouri during the proposed class period was approximately $3.5 million. Adden. at 37-39 ¶ 6. When combined with the other relief plaintiffs sought, including punitive damages (which, under Mo. Rev. Stat. § 510.265.1, could amount to five times compensatory damages), as well as injunctive relief, and attorneys' fees, the amount in controversy in each case was well over the CAFA threshold.[1]

---

[1] The potential value of punitive damages, injunctive relief, and statutory attorneys' fees is to be included in determining the amount in controversy where plaintiffs seek that relief in their complaint. *See, e.g., OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 348-50 (8th Cir. 2007) (amount in controversy exceeded jurisdictional threshold, even where plaintiff sought less than threshold in compensatory damages, because of the potential for punitive damages); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992) (noting that attorney fees count toward the jurisdictional minimum calculation); *Bishop Clarkson Mem'l Hosp. v. Reserve Life Ins. Co.*, 350 F.2d 1006, 1008-10 (8th Cir. 1965) (assessing potential value of injunctive relief in determining amount in controversy).

Appellate Case: 13-1996    Page: 12    Date Filed: 05/22/2013 Entry ID: 4038189

## Remand Proceedings

Plaintiffs filed motions to remand in each of the cases. *See Levy v. Pfizer Inc.*, Case No. 4:12-cv-02266-HEA ("*Levy*"), Apdx. at 2, Dkt. No. 7; *Yoffie v. Bayer Healthcare LLC*, Case No. 4:12-cv-02307-CDP ("*Yoffie*"), Apdx. at 18, Dkt. No. 8; *Raskas v. Johnson & Johnson, et al.*, Case No. 4:12-cv-02174-JCH ("*Raskas*"), Apdx. at 11, Dkt. No. 15.[2]  Plaintiffs did not suggest, much less provide any evidence, that the amount in controversy in any of the three cases was in fact $5 million or less.  Instead, plaintiffs contended that defendants had not satisfied their burden of showing that more than $5 million was "in controversy" because plaintiffs sought to recover only some unspecified portion of total Missouri sales of the product in the form of the value of medication that had been thrown away by consumers.  *See, e.g., Levy*, Apdx. at 2, Dkt. No. 7 at p. 6.

Because of the overlap between the lawsuits, defendants filed a motion to coordinate the cases before a single judge.  *See Raskas*, Apdx. at 12, Dkt. No. 29. On February 1, 2013, Chief Judge Perry issued an order setting a joint hearing on the motion to coordinate, and on the remand motions in all three cases.  Apdx. at 12-13, Dkt. Nos. 30 & 31.

---

[2] Each Defendant also filed a Rule 12(b)(6) motion to dismiss, and a motion to strike class allegations on the basis that, from the face of the complaints, plaintiffs' proposed classes were unascertainable and common questions did not predominate.

6

At the March 13, 2013, hearing, the district court questioned plaintiffs'
counsel about his theory that the "amount in controversy" was not the total retail
sales potentially at issue, but rather the value of the medication that was thrown
away.  Asked how he would ever go about showing the value of the discarded
medication on a classwide basis, plaintiffs' counsel variously responded that he
had "wrestled with that," that he "d[id]n't know," that he may have to conduct
"some sort of modeling" or "maybe a survey of Missouri consumers, something
like that," and that he "may conclude that it's impossible."  Apdx. at 193-95, 236.
Plaintiffs' counsel argued, however, that his inability to articulate any conceivable
way to narrow the amount in controversy from the total amount of retail sales at
this stage of the case was immaterial.

### The District Court's Ruling

On March 26, 2013, the district court granted plaintiffs' remand motions.
The court acknowledged that two of the three requirements for CAFA jurisdiction
were satisfied:  there was minimal diversity between the parties, and there was no
"serious[] dispute" that there were at least 100 putative class members.  Adden. at
6.  But the court concluded that defendants had not shown that $5 million was "in
controversy."  *Id.* at 8-10.  The court acknowledged that defendants had provided
"extensive data of sales of their respective products in question to citizens of
Missouri."  *Id.* at 8.  But, according to the district court, more was required:  in

7

order to remove under CAFA, defendants had to "propose a logical formula for calculating the potential damages in this case . . . ." *Id.* At the same time as it required defendants to devise a "formula" for calculating plaintiffs' classwide damages as a condition to removal, the court acknowledged that plaintiffs had conceded at the hearing that they were "unaware of a proper mechanism for calculating potential compensatory damages." *Id.*

In addition, as to Bayer, the district court accepted plaintiff Yoffie's after-the-fact argument that she sought recovery only as to a single product, "Genuine Bayer Aspirin," even though that product is mentioned nowhere in the complaint. Bayer had based its Notice of Removal on the sales of the group of products known as "Bayer Aspirin" or "Bayer Aspirin products," which the complaint expressly put at issue. *See* Adden. at 9-10; *compare* Apdx. at 142-43, *with Yoffie*, Apdx. at 20, Dkt. No. 26 at p. 7. But having concluded, based on plaintiff Yoffie's post-removal argument about the scope of the complaint, that the complaint addressed only a single product, the district court rejected Bayer's evidence of the sales of "Bayer Aspirin" products as "unhelpful" in determining the amount in controversy. Adden. at 10. On that basis, the court granted the motion to remand.

Pursuant to 28 U.S.C. § 1453(c), defendants timely petitioned for leave to appeal the district court's remand orders. The district court stayed its order pending a disposition by this Court, noting that "defendants have adequately

8

demonstrated a sufficient likelihood of success on the merits."  Adden. at 21.  On May 2, 2013, this Court granted the petition and set an accelerated briefing schedule.

## STANDARD OF REVIEW

CAFA created an exception to the general rule that remand orders are unreviewable, giving Courts of Appeals the discretion to accept an appeal of an order granting or denying remand of a class action.  28 U.S.C. § 1453(c).  Review of such orders is *de novo*.  *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).

## SUMMARY OF THE ARGUMENT

Congress enacted CAFA, 28 U.S.C. § 1332(d), to expand federal jurisdiction over high-stakes class actions, allowing defendants to avail themselves of a federal forum in any class action where there is minimal diversity, at least 100 proposed class members, and more than $5 million in controversy.   28 U.S.C. § 1332(d)(2).  CAFA was intended to ensure that the law no longer "enable[d] plaintiffs' lawyers who prefer to litigate in state courts to easily 'game the system' and avoid removal of large interstate class actions to federal court."  S. Rep. No. 109-14, at 10, *reprinted in* 2005 U.S.C.C.A.N. 3, 11.

But ever since the passage of CAFA, plaintiffs have tried various tactics to avoid having to litigate in a federal forum.  For example, until recently, plaintiffs' counsel would routinely purport to limit the class relief sought in state court to a

9

maximum of $5 million in order to prevent removal. Although this Court had previously determined that these limiting stipulations operated to defeat CAFA jurisdiction (*see Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069 (8th Cir. 2012)), the Supreme Court in *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345 (2013), held earlier this year that plaintiffs cannot evade federal jurisdiction under CAFA by stipulating away absent class members' relief.

Following on from *Standard Fire*, this appeal presents the question of whether plaintiffs can circumvent federal jurisdiction in high-stakes class actions in another way: by praying for damages that plaintiffs concede they have no idea how to prove and indeed may be impossible to prove on a classwide basis. Defendants here presented evidence that the retail sales of the subject medications in Missouri approached or exceeded the $5 million CAFA threshold, and the amount in controversy was therefore easily met when punitive damages, injunctive relief, and attorneys' fees were taken into account.

In response, plaintiffs argued that because they sought only the value of the medication that was discarded and replaced, the real amount in controversy was some unspecified portion of the retail sales. Plaintiffs did not attempt to prove that it was legally impossible for the amount-in-controversy to exceed $5 million. In fact, they admitted they had no idea whether this portion was greater than $5 million or not, and they could not point to a single dollar or purchase, out of the

10

millions of dollars of sales identified by defendants, that was not "in controversy." But plaintiffs contended that if defendants wanted to remove, it was incumbent upon them to do what plaintiffs admitted may be "impossible": come up with a way to calculate plaintiffs' damages on a classwide basis.

The district court agreed, ruling that defendants had not met their initial burden on removal because they had not devised a "formula" to calculate how much in classwide damages plaintiffs might ultimately be entitled to recover. The court's order departed from the guidance provided in *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935 (8th Cir. 2012), where this Court explained that defendants' burden on removal is a "pleading requirement, not a demand for proof," and that defendants need only "describe" how the factfinder "*might* legally conclude" that the amount in controversy exceeds $5 million. *Id.* at 944.

By requiring defendants to come forward with a "formula" to calculate plaintiffs' classwide damages, even though they had already presented evidence of the value of purchases presently at issue, the district court saddled defendants with an improper, heightened burden at the removal stage that was not theirs to meet. Indeed, as the Supreme Court just made clear, it is *plaintiffs'* burden at class certification to establish that classwide damages could be established by common proof. *See Comcast Corp. v. Behrend*, --- S. Ct. ----, 2013 WL 1222646, at *5 (U.S. Mar. 27, 2013).

11

The district court's order also conflicts with recent decisions from other federal Courts of Appeals. Both the Seventh and Ninth Circuits have determined that when defendants show that amounts exceeding $5 million are at issue, a plaintiff cannot evade jurisdiction merely by asserting that it seeks only some unspecified portion of the amounts defendants have identified. Rather, if the plaintiff is unwilling or unable to limit the amount at issue, then the whole pot of money is "in controversy." *See Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). So too here. Plaintiffs defined the classes in such a way that, without thousands of individual inquiries, neither they nor defendants can eliminate any purchaser from the class or any purchase from their damage theory. While individualized inquiries might later reveal that some purchases should be excluded from the class, as in *Spivey* and *Lewis*, every purchase is "in controversy" at the time of removal.

The district court's decision, if allowed to stand, would not only create a circuit split, but would also have serious implications for CAFA jurisdiction in this Circuit. Although these three cases indisputably put in controversy as much as tens of millions of dollars in retail sales of the subject medications even before considering punitive damages, attorneys' fees, and injunctive relief sought by plaintiffs, the district court remanded them to state court, which would be in a position to make key rulings on motions to dismiss, class certification, and, if

12

necessary, summary judgment.  The parties could be forced to litigate in state court for months or years, contrary to the purposes of CAFA, until such time as plaintiffs purport to identify some way to calculate damages—which may not happen until the eve of trial.  The district court's order incentivizes plaintiffs to be evasive with defendants and the courts—saying as little as possible about their damages theories, and putting defendants to the choice of either coming up with a "formula" to prove plaintiffs' damages or litigating in state court.

The district court also erred by ruling that Bayer was required to provide additional evidence on the amount in controversy when plaintiff Yoffie argued that only one form of Bayer Aspirin was at issue, in spite of broader language in her complaint.  By allowing Yoffie to narrow the relief she claimed after Bayer had filed its Notice of Removal, the district court violated the longstanding rule that jurisdiction is based on the pleadings at the time of removal.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938); *cf. Standard Fire Ins. Co.*, 133 S. Ct. at 1350  (amount in controversy determined by complaint, not by stipulation purporting to limit relief).

This Court should reverse the district court's remand order.

Appellate Case: 13-1996     Page: 20     Date Filed: 05/22/2013 Entry ID: 4038189

## ARGUMENT

A.   **The District Court's Decision Misapplies This Circuit's Standards For CAFA Removal.**

In *Hartis*, this Court explained what a defendant must do in order to remove a lawsuit under CAFA in the Eighth Circuit. When a party removes under CAFA, "[t]he removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof. Discovery and trial come later.'" *Hartis*, 694 F.3d at 944-45 (quoting *Spivey*, 528 F.3d at 986). A defendant need only show that a fact finder "*might* legally conclude" that plaintiffs may be awarded relief greater than the jurisdictional minimum. *Id.* at 946 (quoting *Bell*, 557 F.3d at 959). Moreover, the removing defendant "need not 'confess liability in order to show that the controversy exceeds the threshold.'" *Id.* at 945. Once the defendant satisfies this initial burden, "remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Id.* at 956.[3]

---

[3] Other federal Courts of Appeals have taken the same or similar approaches to determining whether they have CAFA or traditional diversity jurisdiction when a defendant removes a complaint that is silent on the amount in controversy. *See McPhail v. Deere & Co.*, 529 F.3d 947, 952-55 (10th Cir. 2008) (McConnell, J.) (discussing allocation of burdens when "a removing defendant claim[s] diversity jurisdiction in the face of a silent complaint"); *see also Federico v. Home Depot*, 507 F.3d 188, 193-99 (3d Cir. 2007) (Aldisert, J.) (holding that when complaint is silent as to the amount in controversy, remand is appropriate only if the plaintiff can establish to a legal certainty that CAFA's jurisdictional threshold is not in controversy).

Appellate Case: 13-1996   Page: 21   Date Filed: 05/22/2013 Entry ID: 4038189

Under the Eighth Circuit's *Hartis* framework, defendants met their burden and established federal jurisdiction. They came forward not just with a "descri[ption]" of how the amount "in controversy" exceeded $5 million, but with evidence establishing the underlying sales figures for the products at issue. *See* Adden. at 30, 33, 37, 41; Apdx. at 56, 59. They explained that plaintiffs had defined their classes in such a way that neither plaintiffs nor defendants could rule out any purchase of the medications at issue from being part of the lawsuit, and that, accordingly, *every* purchase of the medication in Missouri was in controversy at the time of removal.

While individualized inquiries might later show that some of those purchases must be excluded from any class, defendants were not required under *Hartis* to prove to a certainty the number of people that would end up being properly included in any class or the amount of damages that would ultimately be recovered. *See Hartis*, 694 F.3d at 944-45. Instead, they were required to describe how a jury *might* legally award relief in an amount that exceeds $5 million if and when it came time to award damages. *Id.* at 944. Defendants carried that burden.

At that point, the burden should have shifted, and plaintiffs, in order to obtain remand, should have been required to "establish to a legal certainty that the claim is for less than the requisite amount." *Id.* at 946 (quoting *Bell*, 557 F.3d at 956). Plaintiffs, however, relied solely on the empty assertion that something less

15

than the total amount of retail sales was really at issue. They never tried to prove how much less was at issue, or even to identify any sales they contended were not actually "in controversy." In fact, besides a passing reference to "some sort of modeling," they conceded that they had no idea how they would ever go about doing so. *See* Apdx. at 193-95. Nor did plaintiffs ever suggest that the amount in controversy was $5 million or less. Indeed, they even acknowledged (while calling it a "stretch") that "perhaps the court might find that, given the large amounts of money defendant has presented, it is reasonably probable that more than $5 million is in controversy." Raskas Mot. For Remand, Apdx. at 11, Dkt. No. 15 at p. 14; *see also* Apdx. at 226.

On that record, and based on a proper application of *Hartis*, the district court should have denied plaintiffs' motions to remand. But the court instead applied a new, heightened standard of proof for removing defendants that departs from *Hartis* in several respects. First and foremost, the district court did not treat defendants' burden as a "pleading requirement," but demanded that defendants supply "proof" of the amount in controversy. Far from simply requiring defendants to "describ[e]" how the factfinder "might legally conclude" that the relief exceeded the jurisdictional threshold, the district court held that it was defendants' burden to come forward with a "formula for calculating the potential damages in this case." Adden. at 8.

Appellate Case: 13-1996     Page: 23     Date Filed: 05/22/2013 Entry ID: 4038189

In addition, while the court stopped short of requiring defendants to "confess liability" outright (*Hartis*, 694 F.3d at 944), its decision would have the effect of requiring defendants to concede that there was a "formula," short of individual inquiry, by which damages could be calculated on a classwide basis. The district court's decision, which requires removing defendants to propose a "formula" for calculating classwide damages is thus at odds with the Supreme Court's recent holding that *plaintiffs* bear the burden of proving that classwide damages can be established through common proof in order to certify a Rule 23(b)(3) class. *See Behrend*, --- S. Ct. ----*,* 2013 WL 1222646, at *5 (class could not be certified where plaintiffs' proposed damages "model" did not "establish[] that damages are capable of measurement on a classwide basis").

The district court's decision effectively eliminates defendants' right to remove under CAFA by requiring them to devise a "formula" to calculate plaintiffs' damages on a classwide basis. That cannot be, and is not, a removing defendant's burden. Because defendants met their initial burden under properly-applied Eighth Circuit precedent, and because plaintiffs presented no evidence about the amount in controversy in response, the motion to remand should have been denied.

17

**B.** **The District Court's Decision Misapprehends The Amount "In Controversy" And Is At Odds With On-Point Decisions From Other Circuits.**

The district court's analysis not only runs afoul of the principles announced by this Court in *Hartis*, but also parts company with the decisions from two other federal Courts of Appeals that have addressed CAFA removal under similar circumstances.[4]  One such case is *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008) – the Seventh Circuit decision articulating the "pleading requirement, not a demand for proof" standard that this Court adopted in *Hartis*.  *Id.* at 986.  In *Spivey*, the plaintiff's state court class action complaint alleged that the defendant marketer made unauthorized charges to his and the proposed class members' credit cards.  *Id.* at 983.  Vertrue removed to federal court, relying upon an affidavit showing that its total billings to Illinois residents (for 4 of the 22 programs at issue) came to almost $7 million.  *Id.* at 985.

In moving to remand, the plaintiff made much the same argument as plaintiffs do here, asserting that "the proposed class consists of only those Illinois residents who were charged by Vertrue without documented authorization, not the entirety of Vertrue's customers in the State of Illinois regardless of authorization."

---

[4] In granting defendants' subsequent Motion to Stay, the district court found that "the lack of authority from this Circuit on these issues makes appellate review appropriate."   Adden. at 21.

18

*Spivey v. Vertrue, Inc.*, 2008 WL 961561, at \*2 (S.D. Ill. Apr. 8, 2008). The district court accepted the argument and remanded. *Id.*

The Court of Appeals, applying the standard this Court adopted in *Hartis*, reversed. The Seventh Circuit explained that the district court erred in requiring the defendant to come forward with evidence of unauthorized billings, because CAFA "does not make federal jurisdiction depend on how much the plaintiff is sure to recover. The question is what amount is 'in controversy.'" *Spivey*, 528 F.3d at 986. The Seventh Circuit concluded that the plaintiffs' allegations "put into 'controversy' the propriety of all of Vertrue's charges, and the complaint demands refunds for all unauthorized charges." *Id.* Thus, while discovery and trial might ultimately have proved that some, many, or all of the charges were in fact authorized, the question for removal purposes was not how many of the charges were unauthorized, but rather how many of those charges were "in controversy" at the time of removal. The same analysis applies here with respect to the sales of defendants' medications.

Faced with similar facts, the Ninth Circuit has reached the same conclusion. In *Lewis*, 627 F.3d 395 (which this Court also relied on in *Hartis*, 694 F.3d at 946), the plaintiff alleged that Verizon had billed some landline telephone customers for premium content without the subscribers' authorization, although her complaint did not specify an amount of damages. *Id.* at 399. To demonstrate the amount in

19

controversy, the defendant proffered an affidavit that showed the total amount billed for the category of services targeted by the complaint. *Id.* The plaintiff argued that the defendant's affidavit was over-inclusive because some of the amounts billed were "authorized" and thus outside the scope of her claim. *Id.* at 399-400; *see also Lewis v. Verizon Commc'ns, Inc.*, 2010 WL 2650363, at \*2 (C.D. Cal. June 30, 2010) (district court noting plaintiff's argument that she "do[es] not seek recovery of *all* ESBI premium content charges billed to subscribers, but only those amounts that were billed *without the subscribers' authorization*").

The district court in *Lewis* accepted the plaintiff's argument and granted the motion to remand, holding that the amount of total billings did not represent the amount in controversy because the class was defined to include only those subscribers who had been charged for premium content "*without the subscribers' authorization*." *Lewis*, 2010 WL 2650363, at \*2. In the district court's view, in the absence of evidence of how many people had been charged without authorization and in what amount, "the amount in controversy in this case is still a matter of pure speculation." *Id.*

The Ninth Circuit reversed. The court explained that "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" *Lewis*, 627 F.3d at 400. Verizon had shown

20

that it billed more than $5 million in premium content charges, and in response, plaintiffs presented no basis for calculating the amount in controversy at $5 million or less. *Id.* at 399-400. Based on that record, the court concluded that, as in *Spivey*, "the entire amount of the billings is 'in controversy.'" *Id.* at 400.

The court below acknowledged the Ninth Circuit's decision in *Lewis* and attempted to distinguish it on the ground that plaintiffs "have explicitly stated that their damages are lower than the total amount of retail sales for the medication." Adden. at 11. But the *Lewis* plaintiff contended precisely the same thing, arguing that "because the complaint challenged only 'unauthorized' charges, there was a distinction between 'unauthorized' and 'authorized' charges for the purposes of determining the amount in controversy." *Lewis*, 627 F.3d at 398. Relying on that distinction, the plaintiff contended (as plaintiffs do here) that the defendant's evidence did not properly measure the amount in controversy, "since it only spoke to the amount of Verizon's gross billings." *Id.*; *see also Lewis*, 2010 WL 2650363, at *2 (district court noting plaintiff's argument that she did not seek recovery of all premium content charges billed to subscribers). But the *Lewis* plaintiff offered no way to eliminate any of the total charges billed from the amount in controversy at the pleading stage. For that reason, the facts at issue in *Lewis* are indistinguishable

from those here.[5]  And rightly so, for if a plaintiff could destroy CAFA jurisdiction simply by "explicitly stating" that the amount in controversy is some unspecified, lower amount than defendants' evidence demonstrates, few cases would ever be successfully removed under CAFA, and the legislative will would be thwarted.  *Cf. Standard Fire*, 133 S. Ct. at 1350 (plaintiffs cannot destroy CAFA jurisdiction by stipulating that amount in controversy will not exceed $5 million).

In well-reasoned opinions, both the Seventh Circuit and Ninth Circuit have confirmed that to establish the amount "in controversy" for CAFA purposes, a defendant need only provide an estimate of the amount in dispute, not devise a formula for calculating the plaintiff's damages.  This is especially true where, as here, plaintiffs' complaint contains no basis for calculating damages.  Defendants now ask this Court to reach the same result.

---

[5] The district court also cited other decisions in apparent support of its remand order.  Adden. at 9.  The court read *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41 (1st Cir. 2009), *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1085 (D.N.D. 2006), and *Thompson v. Apple, Inc.*, 2011 WL 2671312 (W.D. Ark. July 8, 2011), to require defendants to come forward with classwide proof of plaintiffs' damages, rather than simply estimate the amount "in controversy" at the time of removal.  Each of these cases is distinguishable because the defendants there actually had control of the information necessary to support a more accurate estimate of the amount in controversy.  *See, e.g., Amoche*, 556 F.3d at 51-53 (noting that "GTL was in a better position than plaintiffs to know who had purchased its policies and where they lived.  Yet it provided the district court with virtually no information about the potential class size.").  Unlike those cases, no one contends here that defendants could have presented something besides their sales figures to establish the amount in controversy.

22

## C. The District Court's Decision Contravenes CAFA's Statutory Purpose.

The "primary objective" of CAFA was to ensure that interstate class actions of "national importance"—meaning cases with at least 100 class members and more than $5 million "in controversy"—would be litigated in federal, rather than state, courts. *Standard Fire*, 133 S. Ct. at 1350. This Court has recognized that Congress sought this objective "[b]ecause of perceived 'abuses of the class action device.'" *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (quoting Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4). "Accordingly, CAFA grants broad federal jurisdiction over class actions and establishes narrow exceptions to such jurisdiction." *Id.* (citing S. Rep. No. 109–14, at 43 (2005), *reprinted* in 2005 U.S.C.C.A.N. 3, 41). But while CAFA was designed to provide the opportunity for class action defendants to avail themselves of a federal forum in such cases, the district court's analysis made it impossible for defendants here to do so.

The result of the decision below is that, without this Court's intervention, these three lawsuits—each of which implicates well over $5 million—will now be remanded to state court for the indefinite future. Plaintiffs will be able to pursue their claims in their favored forum until such time as they choose to reveal exactly how they purport to calculate damages, hoping no doubt that in the meantime the pendency of these class action claims in state court will produce an *in terrorem*

23

settlement.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail").

While plaintiffs may someday have to reveal their damage theory, at which time the lawsuits might ultimately become removable, the state court by that time will have made significant, and potentially dispositive, decisions about these multimillion-dollar lawsuits, which Congress intended federal courts to make.  *See* S. Rep. No. 109-14, at 14, *reprinted in* 2005 U.S.C.C.A.N. 3, 15 (noting concern that "[t]he lack of a federal forum for most interstate class actions and the inconsistent administration of class actions in state courts have led to several forms of abuse"); *see also Westerfeld*, 621 F.3d at 822 (citing Senate history concerning abuse of the class-action mechanism); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) (same).

The implications of the district court's decision extend beyond these parties and the particular facts of this case.  Indeed, the decision provides a road map to other class-action plaintiffs seeking to avoid federal court.  If the district court's reasoning takes root, plaintiffs will be incentivized to plead vague damage theories, and when defendants estimate an amount in controversy greater than $5 million,

24

plaintiffs can simply label the estimate "over-inclusive" and insist that their claims are really worth less than defendants say.[6]

Under the district court's analysis, defendants would then be left with two options: (1) return to state court to continue litigating until plaintiffs actually disclose exactly how they intend to calculate damages; or (2) come up with a "formula" to calculate plaintiffs' damages for them on a classwide basis. The first option would allow plaintiffs to pursue multimillion-dollar class actions in state court indefinitely, and would render defendants' statutory right to remove "subject to the plaintiff's caprice." *St. Paul Mercury*, 303 U.S. at 294; *see also McPhail*, 529 F.3d at 955 (noting that allowing a plaintiff to "avoid removal merely by declining to allege the jurisdictional amount . . . would allow frustration of the purpose of diversity jurisdiction, which is, after all, to protect the out-of-state defendant"). And even in cases where the second option is viable (which it isn't here), defendants would be forced to concede one of the elements of class certification as a trade-off for federal jurisdiction. *See Behrend*, --- S. Ct. ----, 2013 WL 1222646, at *5.

---

[6] Indeed, plaintiffs in this Circuit are already trying to avoid CAFA jurisdiction by relying on the decision below for the proposition that removing defendants are required to devise "a logical formula or methodology for calculating the potential damages" on a classwide basis. *See, e.g.,* Motion to Remand in *Clements v. DIRECTV, LLC*, Case 4:13-cv-04048-SOH, Dkt. No. 10 at 6-7 (W.D. Ark. May 16, 2013).

Each of the defendants established that their exposure in these lawsuits (which seek not just compensatory damages, but punitive damages, injunctive relief, and attorneys' fees) is significantly in excess of the $5 million jurisdictional threshold. In sum, these are the kinds of high-stakes cases that Congress intended should be heard in federal courts. The district court's decision, which imposes an impossible burden on removing defendants, frustrates that congressional purpose, and should be reversed.

### D. As To Bayer, The District Court's Decision Violates Longstanding Authority By Permitting Plaintiff Yoffie To Narrow The Relief In Her Complaint Post-Removal.

As to *Bayer*, the district court also erred by accepting plaintiff Yoffie's post-removal attempt to defeat jurisdiction by redefining the scope of her complaint to a single product that the complaint never mentions. The district court's order contravenes established law that jurisdiction is based on the pleadings at the time of removal, and not on plaintiffs' *post hoc* articulations of their claims. *See St. Paul Mercury*, 303 U.S. at 292 (holding that even if "the plaintiff after removal by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction"). That principle applies equally in the CAFA context. *See Hargis*, 674 F.3d at 789-90 (holding that plaintiffs could not avoid CAFA jurisdiction through a post-

26

removal amendment to the complaint that narrowed nationwide class to a statewide one).

Plaintiff Yoffie's complaint refers generically to "Bayer Aspirin." Apdx. at 121 ¶ 1. The complaint also uses the plural "Bayer Aspirin products" on at least two occasions, including in the Prayer for Relief. Apdx. at 136 ¶ 61, 142-43. Bayer does not make any single product called "Bayer Aspirin," but does use "Bayer Aspirin" and "Bayer Aspirin products" to describe a range of products. Apdx. at 173-75. That terminology appears on Bayer's website, which Yoffie cites in her complaint. *See* Apdx. at 132 ¶ 47; *see also* http://www.wonderdrug.com/ products/products.htm (identifying a full line of products with the "Bayer Aspirin" name and logo). Therefore, when it removed the case, Bayer established the amount in controversy with sales figures related to the group of "Bayer Aspirin" products that were put at issue by the complaint, reasonably read. Apdx. at 117-18 ¶ 6. These figures well exceeded the CAFA jurisdictional threshold, even before consideration of punitive damages, injunctive relief, and attorneys' fees.

In her Motion to Remand, plaintiff Yoffie tried to avoid this showing and narrow the scope of her complaint, arguing that—despite the complaint's reference to "Bayer Aspirin" and "Bayer Aspirin products"—she really meant to put at issue

Appellate Case: 13-1996    Page: 34    Date Filed: 05/22/2013 Entry ID: 4038189

only a single product, "Genuine Bayer Aspirin."[7]  Nowhere does the complaint use

the words "Genuine Bayer Aspirin."   The district court nevertheless allowed

Yoffie to make this post-removal change, holding that "the complaint and

arguments presented by the plaintiff make it clear that the only drug at issue is

Genuine Bayer Aspirin."   Adden. at 10.   The district court then concluded that

Bayer's showing on amount in controversy was "unhelpful," since it related to

"Bayer Aspirin products" and not "Genuine Bayer Aspirin," and granted the

motion to remand on that basis.  *Id.*

Federal jurisdiction is based on the pleadings at the time of removal.

Plaintiff Yoffie's complaint could not reasonably be read to put only "Genuine

Bayer Aspirin" at issue.  It refers to "products" plural, and makes no reference to

"Genuine Bayer Aspirin."   The district court expressly and improperly based its

determination of the scope of the complaint on "arguments presented by the

plaintiff."   Adden. at 10.   The court erred by allowing Yoffie to defeat federal

---

[7] Plaintiff Yoffie contends that the complaint's description of  "Bayer Aspirin" as
an over-the-counter product used for specified aches and pains somehow narrows
the products at issue to "Genuine Bayer Aspirin."  Apdx. at 122 ¶ 3.  But the
description that she cites also applies to multiple Bayer Aspirin products.
*Compare* Pls.' Opp. to Defts' Pet. for Permission to Appeal at 17 (arguing that the
Aspirin uses identified without citation in her complaint limit the entire complaint
to "Genuine Bayer Aspirin" despite never mentioning that product) *with*
www.wonderdrug.com/products/products.htm (describing, *e.g.*, Extra Strength
Bayer Plus as used for "headache, pain and fever of colds, muscle pain, menstrual
pain, toothache, and minor pain of arthritis"), the exact same uses identified in the
*Yoffie* complaint.

Appellate Case: 13-1996     Page: 35     Date Filed: 05/22/2013 Entry ID: 4038189

jurisdiction through post-removal arguments purporting to limit the amount in controversy. *See St. Paul Mercury*, 303 U.S. at 292; *Hargis*, 674 F.3d at 789-90. This Court should reject plaintiff Yoffie's re-definition of the scope of her complaint, and should reverse the grant of the motion to remand against Bayer on this ground.

## CONCLUSION

For all the foregoing reasons, this Court should reverse the district court's remand order.

Dated:  May 22, 2013

Respectfully submitted,

/s/   *Thomas C. Walsh*
Thomas C. Walsh
Dan H. Ball
Christopher J. Schmidt
BRYAN CAVE LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020

Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Counsel for Johnson & Johnson and McNeil-PPC, Inc.*

Appellate Case: 13-1996    Page: 36    Date Filed: 05/22/2013 Entry ID: 4038189

Robyn E. Bladow
Shaun Paisley
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

James P. Muehlberger
Douglas B. Maddock, Jr.
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Pfizer Inc.*

Eugene A. Schoon
Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Terry Lueckenhoff
FOX GALVIN, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
Telephone: (314) 588-7000
Facsimile: (314) 588-1965

*Counsel for Bayer Healthcare, LLC*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record hereby certifies that the foregoing brief was prepared using Microsoft Word 2003, in 14-point Times New Roman font and that it contains 6,652 words from the Jurisdictional Statement through the Conclusion as determined by the Microsoft Word word-counting system. I further certify that the electronic copies of the brief and addendum filed with the Court and served on all parties have been scanned for viruses and are virus-free.

/s/ _____*Thomas C. Walsh*_____

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2013, I electronically filed the foregoing Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ *Thomas C. Walsh*