# In the
# United States Court of Appeals
## for the Eighth Circuit

———— • ————

DANIEL RASKAS,

*Plaintiff-Appellee,*

v.

JOHNSON & JOHNSON; McNEIL-PPC, INC.,

*Defendants-Appellants.*

———————————————————————————————————

MARJIE LEVY,

*Plaintiff-Appellee,*

v.

PFIZER, INC.,

*Defendant-Appellant.*

———————————————————————————————————

LESLIE YOFFIE,

*Plaintiff-Appellee,*

v.

BAYER HEALTHCARE LLC,

*Defendant-Appellant.*

————————————————————

Appeal from the United States District Court
for the Eastern District of Missouri-St. Louis, No. 4:12-cv-02174-JCH, 4:12-cv-02266-HEA,
4:12-cv-02307-CDP.
The Honorable **Jean C. Hamilton**, Judge Presiding.

## BRIEF OF APPELLEES
## DANIEL RASKAS, MARJIE LEVY & LESLIE YOFFIE

**(COVER CONTINUED ON OTHER SIDE)**

RICHARD STEVEN CORNFELD
LAW OFFICES OF RICHARD S. CORNFELD
1010 Market Street
Suite 1605
Saint Louis, Missouri 63101
Telephone: (314) 241-5799

*Attorney for Appellees*
*Daniel Raskas, Marjie Levy and Leslie Yoffie*

---

 COUNSEL PRESS · (866) 703-9373       PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................1

COUNTERSTATEMENT OF THE ISSUES PRESENTED....................................2

COUNTERSTATEMENT OF THE FACTS ...........................................................3

SUMMARY OF ARGUMENT ..................................................................9

ARGUMENT .....................................................................................10

I.  THE DISTRICT COURT PROPERLY CONCLUDED THAT
    DEFENDANTS FAILED TO MEET THEIR BURDEN OF PROOF
    OF ESTABLISHING THAT PLAINTIFFS' "ACTUAL DEMANDS"
    EXCEED THE JURISDICTIONAL THRESHOLD ...................................10

    A.  Defendants Distort the Standards of CAFA Removal to Avoid
        Their Obligation to Establish that Plaintiffs' "Actual Demands"
        Exceed the Jurisdictional Threshold ...................................10

    B.  Defendants Exaggerate Plaintiffs' Demands in a Misguided
        Attempt to Manufacture Federal Jurisdiction; the District Court's
        Decision Properly Recognized That They Failed to Meet Their
        Burdens of Proof ................................................................14

        1.  Defendants Did Not Meet Their Burden of Proof Because
            Their Evidence Overstated What Plaintiffs Are Claiming .......14

        2.  The District Court's Decision Should Be Affirmed on the
            Additional Ground that the Evidence that Defendants
            Relied on Was Inadmissible Hearsay .......................................18

    C.  Decisions of Other Courts Do Not Contradict, and Indeed Support,
        the District Court's Decision ...................................................24

    D.  The District Court's Decision Does Not Violate CAFA's Purpose....28

    E.  The District Court Correctly Found That Bayer Improperly
        Presented Irrelevant Evidence Beyond the Drug at Issue ...................31

i

CONCLUSION ..........................................................................................................35

ii

Appellate Case: 13-1996    Page: 4    Date Filed: 06/12/2013 Entry ID: 4044390

# TABLE OF AUTHORITIES

*Amoche v. Guarantee Trust Life Ins. Co.*,
  556 F.3d 41 (1st Cir. 2009) ...................................................................29

*Bartnikowski v. NVR, Inc.*,
  307 F. App'x 730 (4th Cir. 2009) ............................................ 27, 28-29

*Bell v. Hershey Co.*,
  557 F.3d 953 (8th Cir. 2009) ..........................................................*passim*

*Berniard v. Dow Chem. Co.*,
  481 F. App'x 859 (5th Cir. 2010) ........................................................27

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006)...................................................................28

*Brill v. Countrywide Home Loans, Inc.*,
  427 F.3d 446 (7th Cir. 2005) ........................................................*passim*

*Brooks v. Tri-Systems, Inc.*,
  425 F.3d 1109 (8th Cir. 2005) ...................................................... 19-20

*Dahl v. R.J. Reynolds Tobacco Co.*,
  478 F.3d 965 (8th Cir. 2007) ...............................................11, 15, 30

*DiTolla v. Doral Dental IPA*,
  469 F.3d 271 (2d Cir. 2006)..................................................................27

*Grupo Dataflux v. Atlas Global Group, L.P.*,
  541 U.S. 567 (2004) .............................................................................30

*Hartis v. Chicago Title Ins. Co.*,
  694 F.3d 935 (8th Cir. 2012) .......................................................*passim*

*In re Northgate Computer Sys., Inc.*,
  240 B.R. 328 (Bankr. D. Minn. 1999) ................................................22

*In re Prempro Products Liab. Litig.*,
  591 F.3d 613 (8th Cir. 2010) ...............................................................12

Appellate Case: 13-1996    Page: 5    Date Filed: 06/12/2013 Entry ID: 4044390

*Junk v. Terminix Int'l Co.*,
628 F.3d 439 (8th Cir. 2010) ...................................................................12

*Knudson v. Sys. Painters, Inc.*,
634 F.3d 968 (8th Cir. 2011) ...................................................................12

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994)................................................................................30

*Kopp v. Kopp*,
280 F.3d 883 (8th Cir. 2002) ...................................................................17

*Lewis v. Verizon Communications, Inc.*,
627 F.3d 395 (9th Cir. 2010) ........................................................24, 25, 26

*Marple v. T-Mobile Cent. LLC*,
639 F.3d 1109 (8th Cir. 2011) .................................................................10

*Miedema v. Maytag Corp.*,
450 F.3d 1322 (11th Cir. 2006) ...............................................................27

*Nichols v. Harbor Venture, Inc.*,
284 F.3d 857 (8th Cir. 2002) ...................................................................30

*Skoda v. Lilly USA LLC*,
488 F. App'x 161 (8th Cir. 2012)........................................................ 11-12

*Spivey v. Vertrue, Inc.*,
528 F.3d 982 (7th Cir. 2008) ...........................................................*passim*

*Standard Fire Ins. Co. v. Knowles*,
133 S. Ct. 1345 (2013).............................................................................26

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*,
119 F.3d 619 (8th Cir. 1997) ..........................................................11, 12, 30

*United States v. Bailey*,
581 F.2d 341 (3d Cir. 1978)......................................................................23

Appellate Case: 13-1996    Page: 6    Date Filed: 06/12/2013 Entry ID: 4044390

*United States v. Calkins*,
  906 F.2d 1240 (8th Cir. 1990) ...............................................................23

*United States v. DeLeon*,
  678 F.3d 317 (4th Cir. 2012) ................................................................23

*United States v. Dunford*,
  148 F.3d 385 (4th Cir.1998) .................................................................23

*United States v. Wright*,
  363 F.3d 237 (3d Cir. 2004)..................................................................23

*Usery v. Anadarko Petroleum Corp.*,
  606 F.3d 1017 (8th Cir. 2010) ..............................................................16

*Westerfeld v. Indep. Processing, LLC*,
  621 F.3d 819 (8th Cir. 2010) ................................................11, 12, 15

*Wilkinson v. Shackelford*,
  478 F.3d 957 (8th Cir. 2007) ................................................................12

**Rules, Statutes & Other Authority:**

28 U.S.C. § 1332(d) ..................................................................................10

28 U.S.C. § 1332(d)(2)..............................................................................10

28 U.S.C. § 1441(a) ..................................................................................10

Fed.R.Evid. 803(6).............................................................................20, 21

Fed.R.Evid. 803(17)...........................................................................20, 21

Fed.R.Evid. 807 ............................................................................ 20, 22-23

Fed.R.Evid. 1101(a) .................................................................................19

Fed.R.Evid. 1101(b)..................................................................................19

Appellate Case: 13-1996    Page: 7    Date Filed: 06/12/2013 Entry ID: 4044390

Fed.R.Evid. 1101(d)..................................................................................................19

www.merriam-webster.com/dictionary/regimen .....................................................34

Appellate Case: 13-1996     Page: 8     Date Filed: 06/12/2013 Entry ID: 4044390

## PRELIMINARY STATEMENT

Far from being an example of an attempt to thwart a plaintiff from "gaming" or "abusing" the system to avoid removal, as Defendants claim (Appellants' Brief at 9, 23, 24), this appeal presents nothing more than an ordinary failure to meet a burden of proof. Under this Court's recent decisions governing removal, Defendants were required to prove that the actual demands in Plaintiffs' Complaints encompassed an amount in controversy exceeding the $5 million jurisdictional threshold. Even though Plaintiffs' Complaints – as conceded by Defendants – involve only the discarded portion of certain specifically identified products, Defendants sought to prove that the jurisdictional threshold was met by relying on total retail sales of those products, speculating that the fact that these purported sales numbers exceeded the threshold somehow proved that the claimed damages also exceeded that threshold. Moreover, they attempted to do so with inadmissible hearsay evidence. The district court correctly rejected Defendants' speculation, resolved all doubts in favor of remand as required by applicable law, and found that Defendants had not met their burden of proof – without even having to reach the evidentiary issue.

As to Defendant Bayer Healthcare, LLC ("Bayer"), the district court correctly found that the subject Plaintiff's Complaint defined the product at issue in such a way that it implicated only a single item from Bayer's line of aspirin

1

products.  It therefore properly rejected Bayer's self-serving attempt to rewrite the Complaint to include its entire line of products in order to contrive federal subject matter jurisdiction.  Accordingly, the remand order should be affirmed in its entirety.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

I.    Did the district court properly find that Defendants failed to meet their burden of proof on removal to establish that the amount in controversy exceeds $5 million where Defendants attempted to manufacture jurisdiction by submitting evidence that was irrelevant to the Plaintiffs' actual demands in their complaints?

*Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935 (8th Cir. 2012);

*Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008);

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005);

*Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009).

II.    Did the district court properly find that the sales numbers Bayer presented included products that were not placed in issue by Plaintiffs' complaints and therefore did not meet its burden of proof?

*Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009).

Both of these questions should be answered in the affirmative.

2

## COUNTERSTATEMENT OF THE FACTS

Because Defendants' statement of facts contains some distortions of Plaintiffs' claims and omits some information, Plaintiffs offer the following counterstatement of the relevant facts:

In these three cases, Plaintiffs challenge Defendants' practices of misleading consumers into discarding over-the-counter medication after the expiration date printed on the package by misrepresenting "expired" medication as unsafe and ineffective. Plaintiffs filed these lawsuits to put a stop to these deceptive practices, which are, as Plaintiffs alleged, designed to generate sales of "replacement" medication.

Except with respect to Bayer, Plaintiffs accept Defendants' descriptions of the Complaints. Bayer, however, mischaracterizes the Yoffie Complaint as encompassing its entire line of "Bayer Aspirin products." That Complaint puts in issue a product referred to as "Bayer Aspirin" and expressly defines what it means by that term at the outset of the Complaint, using the singular "medication" and describing the product's uses in detail: "Bayer Aspirin is an 'Over-the-Counter' ('OTC') medication, available without a physician's prescription for minor, temporary conditions like headaches, menstrual pain, minor pain of arthritis, muscle pain, pain and fever of colds, and toothache." (App'x at 121, 122, Yoffie Complaint at ¶ 3).

3

The Complaint refers to "Bayer Aspirin" by itself – not "Bayer Aspirin products" – no fewer than 54 times. (App'x at 121-44, Yoffie Complaint at ¶¶ 1, 2 (2 references), 3 (2), 5 (2), 6, 7, 15, 16, 19, 20 (2), 23, 30, 31, 38, 44, 45, 46, 47, 48, 50, 61, 64, 65 (2), 66, 68 (14), 70, 79, 80, 82, 86, 92 Headings B (p. 6) and C (p. 11), and Prayer for Relief, ¶¶ (A) and (C)). By contrast, the phrase "Bayer Aspirin products" occurs in the Complaint only twice. The first is in ¶ 61, which alleges that a statement by an industry association official was false as to "Bayer Aspirin" because of the lack of testing of "Bayer Aspirin products." (App'x at 136, Yoffie Complaint at ¶ 61). The second is in the Prayer for Relief, where Yoffie asks that Bayer be required to "disclose the meaning of the 'expiration dates' printed on the packages of its Bayer Aspirin; [and] to provide accurate information as to when its Bayer Aspirin products are no longer stable, safe, and effective …." (App'x at 143, Yoffie Complaint at Prayer). At the same time, Paragraph 2 describes the equitable relief plaintiff seeks in terms nearly identical to those in ¶ (C) of the Prayer for Relief, except that "Bayer Aspirin" occurs twice and "products" not at all.

In attempting to establish jurisdiction, Bayer ignored Plaintiff Yoffie's definition of Bayer Aspirin and purported to lump in multiple different products that did not meet that definition. Bayer's employee Richard Kloenne submitted an affidavit setting forth retail sales numbers for its entire line of Bayer Aspirin

4

products. He did so without referring to the Complaint's definition of Bayer Aspirin. Instead he stated: "There are several products that Bayer considers to be 'Bayer Aspirin,' including Genuine Bayer Aspirin, several Bayer Aspirin regimen products, several extra strength products and Bayer Advanced Aspirin products." (Addendum at A-42, Kloenne Affidavit at ¶ 4). He provided purported sales data on them all. (Addendum at A-42, Kloenne Affidavit at ¶ 4). The other Defendants also initially provided numbers on a broader set of medications than those placed at issue in the Complaints, but they appropriately narrowed the evidence in supplementary affidavits. (Addendum at A-30 to A-40.). Bayer did not.

After Bayer directed the district court to its *wonderdrug.com* website containing a listing of all the products that Mr. Kloenne had included in the sales numbers (Appellee App'x at 59, n. 4.), Plaintiffs showed that only those called "Genuine Bayer Aspirin" and "Full Dose (325 mg) Genuine Bayer Aspirin", which may be the same product, had descriptions that matched Plaintiff Yoffie's definition of "Bayer Aspirin." (*Id*. at 77-79). The website's description of the other products was inconsistent with Plaintiff Yoffie's definition of "Bayer Aspirin" in ¶ 3. (Id.).

Bayer and the other two companies had submitted affidavits in support of removal that presented retail sales figures that the witnesses stated they obtained from a third-party consultant named SymphonyIRI Group, Inc. ("SymphonyIRI")

5

and, in the case of one of Pfizer's two affiants, Wal-Mart. (Addendum at A-30 to A-32, Apkarian Supp. Decl. at ¶¶ 3-5; A-33 to A-36, Rezek Supp. Decl. at ¶¶ 3, 5; A-37 to A-40, Barton Supp. Affidavit at ¶¶ 8-9; A-41 to A-43, Kloenne Decl. at ¶¶ 4-6). They did not submit any actual records of the sales figures that they obtained from these third parties. They merely set forth the retail sales numbers that they said they had obtained. Plaintiff challenged that evidence as inadmissible hearsay. (4:12-cv-02266-HEA, Dkt. # 7 at 9, Dkt. # 19 at 2, 4-7 (pp. 6, 8-11 of 18 of the pdf); 4:12-cv-02174-JCH, Dkt. # 28 at 7 (p. 11 of 16 of the pdf); 4:12-cv-02307-CDP, Dkt. # 8 at 8-9, Dkt. # 26 at 3-6 (pp.7-10 of 16 of the pdf)).

During the litigation over whether the removal was proper, the parties submitted more than 100 pages of briefing on the motions to remand, as well as three additional defense affidavits supplementing the original four. The court conducted an hour-and-a-half motion hearing on March 13, 2013. (App'x at 180-242). Defendants misrepresent Plaintiffs' counsel's comments at that hearing regarding how damages would be proven. At the hearing, the court asked Plaintiffs' counsel how Plaintiffs would prove damages. (App'x at 193:19-20). In their Brief, Defendants quote snippets of counsel's remarks out of context, as though he were fumbling through his response and had no idea how damages could be determined. The entire colloquy, however, shows that: (1) Plaintiffs' damage calculation would likely be based on modeling, using surveys of consumers; and

6

(2) they were considering only seeking certification of classes asking for injunctive relief, not damages, as has been done in other cases. (App'x at 193:19-187:12).

Following the hearing, the district court granted Plaintiffs' motions and remanded the cases to the Circuit Court of St. Louis County. The court "conclude[d] that defendants have not met their burden of demonstrating this court's jurisdiction under CAFA …." (Mem. Op. at 2, Addendum at A-2). Defendants accuse the court of requiring that they propose a formula for calculating damages. Defs' Brief at 8. Here is what the court said in full on this point:

> Defendants have provided extensive data of sales of their respective products in question to citizens of Missouri. However, defendants do not propose a logical formula for calculating the potential damages in this case *using only the total sales data provided*. In fact, none of the defendants presents such a formula or methodology for calculating the potential damages, but rather asks the court to presume that the amount in controversy must satisfy the jurisdictional threshold *based on the high sales figure alone*. This type of speculation is not sufficient to satisfy the jurisdictional burden on defendants.

(Addendum at A-8 (emphasis added)).

With respect to Bayer, the court found that its sales figures included products not at issue: "I believe the complaint and arguments presented by the plaintiff make it clear that the only drug at issue is Genuine Bayer Aspirin." (Addendum at A-10). Regarding the evidentiary issue, the court decided to consider the affidavits "[w]ithout determining the admissibility of these affidavits."

7

(Addendum at A-6, n. 2). The court stated: "Because I conclude that defendants have not met their burden even when considering these affidavits, this issue does not affect my rulings in this order." (*Id.*)

Subsequently, the court stayed its order pending appeal. Defendants quote the court's statement finding that "defendants have adequately demonstrated a sufficient likelihood of success on the merits." (Appellants' Brief at 9). At the same time, the court explained: "Although I found the cases cited by defendants to be distinguishable from the facts in these cases – and instead found cases denying federal CAFA jurisdiction to be more persuasive and applicable to the facts in these cases – the lack of authority from this Circuit on these issues makes appellate review appropriate." (Addendum at A-21).

Lastly, although it has no direct bearing on whether Defendants have met their burden of establishing the amount in controversy, Defendants have also slightly misstated the relief Plaintiffs are seeking. They state that Plaintiffs seek, in this order, "classwide compensatory damages, punitive damages, injunctive relief, and attorneys' fees." (Appellant's Brief at p. 3). In fact, aside from procedural matters, such as certifying the classes, the first remedy requested in each instance is equitable relief that would put an end to Defendants' challenged practices. (See Prayers for Relief, App'x at 52-53, 102-103 and 142-143; see also counsel's statement at the Motion Hearing, App'x at 188:8-18).

8

## SUMMARY OF ARGUMENT

The district court properly found that Defendants had failed to meet their burden of proof on removal to show that the amount in controversy based on the Plaintiffs' claims for the value of discarded medicine exceeded $5 million. Defendants submitted overbroad, irrelevant, and inadmissible retail sales figures in an effort to manufacture federal subject matter jurisdiction. The district court correctly found that their burden had not been met. Now, on appeal, Defendants distort CAFA and the cases interpreting it in an attempt to conceal their failure to meet their burden of proof and instead shift the burden of proof to Plaintiffs. This Court should reject their contentions and affirm the district court. The court should also decide the evidentiary issue that the district court found it unnecessary to decide and rule that Defendants' "proof" was based on inadmissible hearsay.

As to Defendant Bayer, the district court correctly concluded that the Plaintiff's Complaint defined the product at issue in a manner that included only one of Bayer's numerous products. Bayer improperly seeks to rewrite the Complaint to include its entire product line in an effort to create federal subject matter jurisdiction. Because the Plaintiffs are the masters of their complaint, this contention too should be rejected, and the remand order affirmed.

9

I.   **THE DISTRICT COURT PROPERLY CONCLUDED THAT DEFENDANTS FAILED TO MEET THEIR BURDEN OF PROOF OF ESTABLISHING THAT PLAINTIFFS' "ACTUAL DEMANDS" EXCEED THE JURISDICTIONAL THRESHOLD.**

   A.   **Defendants Distort the Standards of CAFA Removal to Avoid Their Obligation to Establish that Plaintiffs' "Actual Demands" Exceed the Jurisdictional Threshold.**

   This court has recognized that CAFA provides "detailed instructions for determining jurisdiction …." *Marple v. T-Mobile Cent. LLC*, 639 F.3d 1109, 1110 (8th Cir. 2011). One of those requirements is that there be more than $5 million in controversy. 28 U.S.C. § 1332(d)(2).

   Here, Defendants distort the law in a misguided attempt to avoid their burden of proof, claiming that they have no burden of proof beyond a mere "pleading requirement," and that they need only show what the damages "might be" in order to manufacture federal jurisdiction. This Court has expressly rejected such speculation as a basis for federal subject matter jurisdiction. In *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935 (8th Cir. 2012), the case on which Defendants place their principal reliance, this Court held that the party purporting to remove a case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1441(a), must establish what the stakes of the litigation are given the plaintiffs' actual demands. In a passage quoting from two separate Seventh Circuit decisions, but that Defendants utterly ignore in their brief, the court stated:

10

> [T]he removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands.... The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff likely to win or be awarded everything he seeks.

*Hartis*, 694 F.3d at 945, *quoting Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008), *quoting Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis and ellipses from *Brill*).  That burden must be met with *evidence* in a fact-intensive inquiry.  "Thus, a party seeking to remove under CAFA must establish the amount in controversy by a *preponderance of the evidence* …."  *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009) (emphasis added).  "Such an inquiry 'is *fact intensive*.'"  *Id*. at 959; *accord, Hartis*, 694 F.3d at 944, *quoting Bell*, 557 F.3d at 959 (emphasis added).

In reviewing the evidence to determine if the requisite showing is made, "the party bearing the burden of proof is not entitled to the benefit of the doubt." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010).  To the contrary, courts "are to 'resolve all doubts about federal jurisdiction in favor of remand' and are strictly to construe legislation permitting removal."  *Dahl v. R.J. Reynolds Tobacco Co*., 478 F.3d 965, 968 (8th Cir. 2007), *quoting Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).  This Court has reiterated the "all doubts" standard on multiple occasions, including in the CAFA context.  *See Skoda v. Lilly USA LLC*, 488 F. App'x 161,

11

163 (8th Cir. 2012); *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011), *quoting Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010); *Westerfeld*, 621 F.3d at 823 (CAFA); *In re Prempro Products Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010), *quoting Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007), *in turn quoting Transit Cas.*, 119 F.3d at 625; *Dahl*.

Once again, Defendants ignore these standards. Instead of analyzing the amount in controversy in terms of Plaintiffs' actual demands – the value of the medication discarded after the expiration date – they exaggerate the scope of Plaintiffs' claims to include everything sold at retail. They say nothing about the requirement to provide evidence in a "fact intensive inquiry" and ignore the "all doubts" standard. Instead, they focus on language from *Hartis* indicating that their burden is a "pleading requirement, not a demand for proof," as though the term "pleading requirement" means that they simply need to "plead" the amount in controversy or "allege" a number greater than $5 million.

Again, this is not the proper standard. The "pleading requirement" referenced in *Hartis* means that the court must scrutinize the *plaintiff's* pleading to determine what is actually at stake in the litigation. Thus, in *Hartis*, this Court analyzed the plaintiff's allegations, not the defendant's, and concluded, based on "the face of the complaint alone," that the plaintiff was seeking approximately

12

$7,242,000.00. *Hartis*, 694 F.3d at 946. As explained below, Defendants failed to make this necessary showing here.

Defendants also suggest, with no support, that once they offered evidence of total retail sales, the burden should then have shifted to Plaintiffs to establish "to a legal certainty" that less than the requisite amount was at stake. (Appellants' Brief at 15). Defendants cite *Hartis* and *Bell* for that proposition, but what the courts held in those cases was that the plaintiff's "legal certainty" showing – for example, by stipulating not to seek the jurisdictional amount – is necessary only "[o]nce the removing party has established by a preponderance of the evidence that the jurisdictional amount is satisfied." *Hartis*, 694 F.3d at 946, *quoting Bell*, 557 F.3d at 956. *Bell* went on to instruct the district court in that case: "If the manufacturers prove by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if Bell can establish that it is legally impossible to recover in excess of the jurisdictional minimum." 557 F.3d at 959. Those cases did not hold – and to Plaintiffs' knowledge no court has ever held – that the burden shifts to the plaintiff where the Defendant did not meet its burden in the first instance. The district court properly found here that Defendants had not met their burden and, under that circumstance, properly left the burden where it belongs, with Defendants. Accordingly, this Court should affirm the district court's order.

13

**B.    Defendants Exaggerate Plaintiffs' Demands in a Misguided Attempt to Manufacture Federal Jurisdiction; the District Court's Decision Properly Recognized That They Failed to Meet Their Burden of Proof.**

In the context of this case, the stakes are only the value of medication discarded after the expiration date printed on the package.  Defendants themselves acknowledge that only the value of discarded medication is at stake, admitting in this court that "Plaintiffs seek to recover the value of the medication they discarded….".  (Appellee App'x at 105, Petition for Permission to Appeal at 2).  Despite this acknowledgment, Defendants purported to base removal on "evidence" concerning the alleged entire retail value of all the subject medication sold in Missouri over the past five years.  This attempt fails for two reasons.  First, assuming that the evidence they submitted was admissible, it was based on data that overstates what is in issue.  Second, the testimony Defendants submitted, in the form of affidavits, was based on inadmissible hearsay.

**1.    Defendants Did Not Meet Their Burden of Proof Because Their Evidence Overstated What Plaintiffs Are Claiming**

First, assuming Defendants' evidence was admissible, the evidence failed to meet their burden of proof.  As noted above, the stakes in this lawsuit are only the value of medication discarded after the expiration date printed on the package. Again, *Hartis* makes clear that only that amount is in controversy and can support federal jurisdiction:  "The demonstration concerns what the plaintiff is claiming

14

(and thus the amount in controversy between the parties) ….” *Hartis*, 694 F.3d at 945, *quoting Spivey*, 528 F.3d at 986, *in turn quoting Brill*, 427 F.3d at 449. Defendants self-servingly claim that what is at stake here is not provable, or that the proposed classes are not certifiable, but these contentions are not relevant at this stage.  Indeed, this Court clearly explained that proposition in *Hartis* when the entire sentence from which the above passage is taken is viewed: “The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.”  *Id.*  (emphasis added).  Accordingly, it matters not whether Plaintiffs ever seek certification of a damages class, much less ultimately formulate a viable damages model.  The “pleading requirement” that Defendants must meet to keep the case in federal court is whether the Complaint places more than $5 million at stake in each of these cases.

Furthermore, Defendants not only ignore the requirement that all doubts be resolved in favor of remand, they would, in effect, put that requirement into reverse by having the Court resolve all doubts in their favor and conclude that, since they presented a total retail sales number greater than $5 million, the amount in controversy (the value of the discarded product) “might” also be more than $5 million.  Under the court’s “all doubts” standard, the doubt goes in the other direction.  *Westerfeld*, 621 F.3d at 823; *Dahl,* 478 F.3d at 968.

Appellate Case: 13-1996     Page: 23     Date Filed: 06/12/2013 Entry ID: 4044390

Nevertheless, as part of their improper attempt to shift the burden of proof to Plaintiffs, Defendants accuse *Plaintiffs* of trying "to game the system and avoid federal jurisdiction." (Appellants' Brief at p. 9). This accusation is unfounded on both the facts and the law. This Court has recognized that, notwithstanding the enactment of CAFA, the plaintiff remains the master of the complaint, and the party seeking removal retains the burden of proving that subject matter jurisdiction exists. *Bell*, 557 F.3d at 956. Plaintiffs, as masters of their complaints, are not obligated to plead their claims in a fashion that Defendants deem suitable, or to claim as damages the total retail value of all medications the Defendants sold in Missouri or any other amount that would facilitate Defendants' removal. Nor does the proposition that Defendants must show that the fact finder "might legally conclude" that damages exceed $5 million mean that Defendants need merely throw out a number greater than $5 million that includes within it the actual amount of damages and thereby establish federal jurisdiction or even shift the burden to Plaintiffs. Defendants' argument is akin to an argument that one could establish the jurisdictional amount in a "lost profits" case by showing only the lost revenues, but not going the second step to show the amount of profits that were lost. *See Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1019 (8th Cir. 2010) (noting that claims of future income and alleged value that do not differentiate

16

between "gross" and "net" are inadequate to satisfy the burden of proof on removal).

Defendants mistakenly argue that the mere possibility that a number smaller than the retail sales number might exceed $5 million somehow meets the "might legally conclude" standard and satisfies the jurisdictional requirement. They base this contention on a misinterpretation of that standard, which comes from the Eighth Circuit's decision in *Kopp v. Kopp*, 280 F.3d 883 (8th Cir. 2002). See *Hartis*, 694 F.3d at 944, *quoting Bell*, 557 F.3d at 956, *quoting Kopp*, 280 F.3d at 885. *Kopp* defines the standard as follows: "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and *proof adduced to the court before trial*, that the damages that the plaintiff suffered are greater than" the jurisdictional amount. *Kopp*, 280 F.3d at 885 (emphasis added). The court must therefore base its "might legally conclude" determination on the pleadings and the proof presented by the party asserting federal jurisdiction. *Id.* Here, since the only proof presented to the district court was of total retail sales, that means that the court must determine whether a fact finder "might legally conclude" that the plaintiffs in each case were entitled to more than $5 million in damages based on nothing more than the retail sales total.

The answer to that question is clearly no. If Plaintiffs presented only evidence of retail sales totals, they could not prevail at trial because, as alleged in

17

their Complaints, their damages are only the subject medications that were discarded because of Defendants' schemes. The mere fact that the total retail sales of the subject products exceed the $5 million jurisdictional threshold does not establish that the value of the discarded medication necessarily exceeds that threshold. Defendants offered no evidence whatsoever concerning the amount of the discarded product or its value. Thus, based on the complaint and the evidence before the court, with all doubts resolved in favor of remand, Defendants failed to meet their burden of proving that a fact finder could legally conclude that the value of the medication discarded after its "expiration date" exceeds the jurisdictional amount. Accordingly, the district court properly remanded the cases.

## 2. The District Court's Decision Should Be Affirmed on the Additional Ground that the Evidence that Defendants Relied on Was Inadmissible Hearsay

Defendants' proof of the jurisdictional amount fails for another reason. Each of their affiants presented sales numbers based on hearsay information that he claimed to have obtained from a third-party consultant named SymphonyIRI and, in the case of one Pfizer affiant, supplemental information from Wal-Mart, without offering a single record to support their testimony. (Addendum at A-31, A-35, A-39, A-41). SymphonyIRI is "a company that provides information and analytics for consumer packaged goods, retail, and healthcare companies in the United States and internationally," information that Defendants purchase (Addendum at

18

A-31, A-39.)  Defendant McNeil purchased information from SymphonyIRI specifically to address Plaintiffs' contentions.  Addendum at A-39.  The district court did not reach the admissibility question but merely assumed, in finding that Defendants had not met their burden of proof, that the affidavits presenting those numbers were admissible.  (*See* Memorandum Opinion at 6, Addendum at A-6).

Preliminarily, the evidence that supports a ruling on jurisdiction must be admissible.  The Federal Rules of Evidence apply to "proceedings before United States district courts [and] courts of appeal," as well as to "civil cases and proceedings."  Fed. R. Evid.  1101(a) and (b).  Rule 1101 provides for certain exceptions where the rules do not apply, such as "the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility," but there is no exception for removal or any other jurisdictional determination.  Fed. R. Evid. 1101(d).  Thus, a holding in favor of federal jurisdiction must be based on admissible evidence.  Since there has been no previous decision on admissibility of the testimony offered by Defendants, this Court must decide the evidentiary issue *de novo*.

The retail sales information presented by Defendants' affiants was hearsay by definition because it came from "an out-of-court statement offered to prove the truth of the statement" – specifically, communications from SymphonyIRI and Wal-Mart to the affiants.  *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th

19

Cir. 2005). In attempting to establish the admissibility of this testimony, Defendants variously argued that it met hearsay exceptions related to business records, Fed. R. Evid. 803(6); market reports and similar commercial publications, Fed. R. Evid. 803(17); and residual hearsay, Fed. R. Evid. 807. But the evidence lacked the one item necessary to meet each of these exceptions, the actual record or records from which the witnesses derived their testimony.

Indeed, it would hardly be an exaggeration to suggest that the Defendants failed to offer the one item without which evidence cannot meet the business-record exception, namely an actual business record. Rule 803(6) provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> > 6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
> >
> > > \*   \*   \*
> >
> > > (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> > >
> > > (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> > >
> > > (C) making the record was a regular practice of that activity;
> > >
> > > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

20

> (E) neither the source of information nor the method or
> circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, the postulated business records are the records on which the affiants relied for their testimony, not the affidavits themselves, because there was no showing that making these affidavits was a regular practice of the Defendants as required by subparagraphs (C) and (D). Moreover, the affidavits simply substitute for oral testimony a witness might make at a hearing – in this case, testimony about retail sales figures. A witness might sponsor a business record containing sales data, and the record itself would then be offered into evidence pursuant to this rule. But testimony about a record is not a record, and Rule 803(6) allows only for the admission of a "record."

Similarly, Rule 803(17) allows only for the admission of reports and other publications made by the declarant, not testimony about them or derived from them. That rule provides:

> The following are not excluded by the rule against hearsay, regardless
> of whether the declarant is available as a witness:
>
>        \*    \*    \*
>
> (17) **Market Reports and Similar Commercial Publications**.
> Market quotations, lists, directories, or other compilations that are
> generally relied on by the public or by persons in particular
> occupations.

Appellate Case: 13-1996    Page: 29    Date Filed: 06/12/2013 Entry ID: 4044390

By its terms, this rule allows only for the admission of reports and other publications made by the declarant. In this instance, the declarants are SymphonyIRI and Wal-Mart; only something they created can be admitted under this rule. Thus, the court in *In re Northgate Computer Sys., Inc.*, 240 B.R. 328, 354 (Bankr. D. Minn. 1999), refused to admit a witness' testimony based on stock market quotations, where the actual quotations were not put before the court, stating that "this rule saves *the original published form* from objection ...." *Id.* at 354 (emphasis in original). Similarly, here, since the report of the declarant is not before the court, the testimony about it is inadmissible.

Nor is the information admissible under Rule 807's residual exception. That rule provides:

> **(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
>
> **(2)** it is offered as evidence of a material fact;
>
> **(3)** *it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts*; and
>
> **(4)** admitting it will best serve the purposes of these rules and the interests of justice.

22

> **(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

(Emphasis added.)

This rule is "limited in scope and narrow in focus." *United States v. Calkins*, 906 F.2d 1240, 1245 (8th Cir. 1990). It "is a narrow exception that should not be construed broadly." *United States v. DeLeon*, 678 F.3d 317, 327 (4th Cir. 2012), *quoting United States v. Dunford,* 148 F.3d 385, 394 (4th Cir.1998). The exception is "to be used only rarely, and in exceptional circumstances." *United States v. Wright*, 363 F.3d 237, 245 (3d Cir. 2004), *quoting United States v. Bailey,* 581 F.2d 341, 347 (3d Cir. 1978).

Here, Rule 807 does not have to be interpreted narrowly to conclude that it does not allow the admission of the affiant's testimony. By the rule's plain terms, the testimony fails to meet the requirement of subparagraph (a)(3) of being "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts …" The witness' second-hand accounts are, at a minimum, no more probative than the actual records they used as the source for those accounts.

23

Accordingly, the testimony on which the Defendants to rely to establish jurisdiction is inadmissible, and therefore their attempt to establish jurisdiction fails for that reason as well.

### C. Decisions of Other Courts Do Not Contradict, and Indeed Support, the District Court's Decision

Defendants primarily rely upon two decisions from other circuits, *Spivey* and *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395 (9th Cir. 2010), as compelling removal. Their reliance is misplaced. Neither *Spivey* nor *Lewis* overrules the principles discussed above. In fact, *Spivey* is the source for some of them. Just as in *Hartis*, the courts in those cases were able to determine that the amount-in-controversy requirement was satisfied based on the allegations of the complaints.

*Spivey* is one of the cases that defines the amount in controversy as "what the plaintiff is claiming." *Spivey*, 528 F.3d at 986, *quoting Brill*, 427 F.3d at 449. There, to determine what the plaintiff was claiming, the court looked at the allegations in the complaint, in which the plaintiff sought a refund for unauthorized charges. Because the complaint alleged that the defendant's practices in making unauthorized credit card charges were "common to all Class Members," and that doing so was the Defendant's standard practice, it had placed in issue *all* of the Defendant's charges. *Id*. By contrast, Defendants point to no allegation in these

24

Complaints that would allow the court to conclude that Plaintiffs are seeking a refund of *all* retail sales.

Similarly, in *Lewis*, the plaintiff sought refund of all unauthorized charges imposed by a telephone carrier on behalf of a third-party biller. The defendant showed that all charges on behalf of the third-party biller exceeded $5 million. The court reversed the district's remand order based on what the Court of Appeals stated "may well be at root a semantic misunderstanding...." *Lewis*, 627 F.3d at 400. The semantic misunderstanding was that the district court "assumed total billings would include both authorized and unauthorized charges and held that the Defendant had failed to meet its burden under our case law to show the amount in controversy, i.e., unauthorized charges, exceeded the jurisdictional amount." *Id*. at 400. The Ninth Circuit found that there was "no *evidence or allegation* to support this assumption….[T]he Plaintiff has not attempted to demonstrate, *or even argue*, that the claimed damages are less than the total billed." *Id*. (emphasis added). As the district court in this case found, the allegations here are different. Plaintiffs "only seek damages for the value of the medication that was actually thrown away… – not the entire package of medication." (Addendum at A-11).

Moreover, in the district court, Defendants *acknowledged* that Plaintiffs' claims are limited to less than total retail sales, specifically to only the portion of the medicine that consumers discarded. In a memorandum filed in the district

25

court, the Defendants in *Raskas* stated that the class consists of consumers who "threw out some *unused portion* of [Tylenol Cold Multi-Symptom solid medication] after the expiration date …."  (Appellee App'x at 13 (emphasis added)).  Defendant Pfizer Inc. recognized that "Plaintiff discarded some *unspecified amount* of Advil after the expiration date printed on the bottle had passed" and that the putative class is limited to consumers who "discarded it with pills still in the bottle …."  (Appellee App'x at 18, 19 (emphasis added)).  Bayer admitted that "[u]nder plaintiff's theory, only those who interpreted the expiration date as a throw away date and then threw away some number of Bayer Aspirin pills when they were still good would be within the class."  (Yoffie, Doc. No. 21 at 1 (emphasis added)).  Thus, unlike *Spivey* and *Lewis*, there is no question but that the evidence Defendants presented – total retail sales – does not represent what is really in controversy – the value of the portion of purchased medication that was discarded after the expiration date.

Defendants also overstate the United States Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013).  That case deals with the issue of whether a class representative can stipulate away the rights of absent class members to relief in excess of the jurisdictional threshold.  It has nothing to do with the issue presented here, whether defendants can submit irrelevant data

26

concerning matters beyond Plaintiffs' allegations in order to create federal subject matter jurisdiction.

Moreover, other Courts of Appeals have confirmed that, on facts like those presented here, the defendants did not meet their burden of proof on removal. *See Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 863 (5th Cir. 2010) (finding that defendants had not met their burden under the *Spivey* standard "of showing not only what the stakes of the litigation *could* be, but what they are" in light of "the generalized and conclusional nature of the allegations of the several petitions and complaints"; emphasis in original); *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730 (4th Cir. 2009) (resolving uncertainty about the amount of overtime per class member in favor of remand where the defendant had not supported its estimate and the plaintiff had offered no evidence on the issue); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1332 (11th Cir. 2006) (resolving uncertainty over value and number of ranges sold in Florida in favor of remand; defendant's evidence of number of ranges registered in Florida and nationwide registration rates did not satisfy burden); *DiTolla v. Doral Dental IPA*, 469 F.3d 271, 277 (2d Cir. 2006) ("a claim to some yet undefined portion" of a pool of funds did not place into controversy the entire pool). Thus, far from being some kind of outlier, the district court's decision comports with decisions of the Second, Fourth, Fifth, and Eleventh

27

Circuits and is not contrary to those of the Seventh and Ninth. This Court should affirm this decision here.

### D. The District Court's Decision Does Not Violate CAFA's Purpose

Defendants overstate CAFA's purpose as part of their effort to hide their failure to meet their burden of proof. This Court has held that "[t]he enactment of CAFA did not alter the proposition that the plaintiff is the master of the complaint. *See Brill*, 427 F.3d at 449. Nor did it impact the traditional rule that the party attempting to remove bears the burden of establishing subject matter jurisdiction. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)." *Bell*, 557 F.3d at 956. Defendants argue, however, that, contrary to CAFA's purpose, the district court's decision compels them unfairly either to continue "litigat[ing] in state court for months or years" until such point as Plaintiffs reveal that more than $5 million is at stake or "come up with a 'formula' to calculate plainitffs' damages ….." Defs. Brief at 13, 25. But defendants have not cited a single case that loosened CAFA's requirements because of such concerns.

On the first point – that Defendants should not have to litigate in state court until they can establish the jurisdictional amount – the Fourth Circuit rejected this very argument in *Bartnikowski.* The court stated:

> NVR argues that it is contrary to the purpose of CAFA to subject defendants to this kind of "wait and see" approach in state court. But CAFA is quite explicit about how it relaxes the jurisdictional requirements for bringing a

28

> class action in federal court. To the extent that Congress sought to relax a
> CAFA defendant's burden for removal, it has done so explicitly.

307 Fed. Appx. at 739 (4th Cir. 2009). Similarly, in *Amoche v. Guarantee Trust*

*Life Ins. Co*., 556 F.3d 41, 53 (1st Cir. 2009), the First Circuit affirmed a remand

order because "the litigation had not developed to a stage where GTL has shown

that the requirements for federal jurisdiction were met under CAFA"; at the same

time, the court noted that its decision did not "permanently foreclose GTL from

attempting to remove this case to federal court" since "[s]uccessive attempts at

removal are permissible where the grounds for removal become apparent only later

in the litigation." The court added: "It is not unfair that GTL wait until the class

allegations are more fully developed before attempting to remove." *Id.*

Nor did the district court compel Defendants to stipulate that damages may

be proven on a class-wide basis in order to obtain removal. As stated above,

CAFA did not impact the traditional rule that the party attempting to remove bears

the burden of establishing subject matter jurisdiction. *Bell*, 557 F.3d at 956.

To come forward with evidence showing the amount at stake in the lawsuit hardly

forecloses Defendants from later contesting damages, whether on an individual or

a classwide basis. If it did, then no defendant who removed a case could ever

mount a defense on the issue of damages. But, as noted above, the relevant inquiry

on removal concerns "what the plaintiff is claiming …, not whether plaintiff is

29

likely to win or be awarded everything he seeks." *Hartis*, 694 F.3d at 945, *quoting Spivey*, 528 F.3d at 986 (7th Cir. 2008), *quoting Brill*, 427 F.3d at 449. For example, if Plaintiffs seek to prove classwide damages based on modeling and consumer surveys, as Plaintiffs' counsel told the district court they might do (App'x at 193:19-195:12), Defendants would be free to challenge it regardless of their showing to support removal. If, on the other hand, Plaintiffs only seek certification of classes asking for injunctive relief, not damages (*see* App'x at 193:19-195:12), Defendants could challenge that class too.

None of that takes away from the independent obligation of federal courts to confirm that subject matter jurisdiction exists before accepting a case. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004). Federal courts are courts of limited jurisdiction, and possess only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Because the removal statutes impede upon the states' rights to resolve controversies in their own courts, such statutes must be strictly construed. *Nichols v. Harbor Venture*, *Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). As noted above, "Federal courts are to 'resolve all doubts about federal jurisdiction in favor of remand' and are strictly to construe legislation permitting removal." *Dahl*, 478 F.3d at 968, *quoting Transit Cas.*, 119 F.3d at 625.

30

Appellate Case: 13-1996    Page: 38    Date Filed: 06/12/2013 Entry ID: 4044390

### E. The District Court Correctly Found That Bayer Improperly Presented Irrelevant Evidence Beyond the Drug at Issue.

The remand order should be affirmed as to Bayer for a separate reason. Assuming for argument's sake that total retail sales numbers may properly be deemed sufficient to establish the amount in controversy, Bayer nevertheless failed to meet its burden. The numbers Bayer presented were for its entire line of aspirin products, not the sole item placed at issue by Plaintiff Yoffie in her Complaint. As explained above, that was "Bayer Aspirin." (See Complaint in Yoffie, ¶ 1, App'x at 121). Bayer submitted the Kloenne Declaration, claiming that Bayer considered its entire line of aspirin products to be "Bayer Aspirin," including "Genuine Bayer Aspirin, several Bayer Aspirin regimen products, several extra strength products and Bayer Advanced Aspirin products." (App'x at 151, ¶ 4). Bayer accuses Yoffie of changing her description of what is involved in the case after removal, but, as stated above, Yoffie described in her Complaint exactly what *she* meant by "Bayer Aspirin," a description that Mr. Kloenne did not take into account in making his estimates:

> Bayer Aspirin is an Over-the-Counter" ("OTC") medication, available without a physician's prescription for minor, temporary conditions like headaches, menstrual pain, minor pain of arthritis, muscle pain, pain and fever of colds, and toothache.

(App'x at 122, ¶ 3). Bayer never attempted to tie the sales figures it presented to items that met that description, instead insisting that it was entitled to prevail based

31

on its own self-serving determination of the relevant products. In fact, as the record shows (Appellee App'x at 77-79), only a single item – "Genuine Bayer Aspirin" – meets the description in the Complaint.

Although the Yoffie Complaint places in issue only Bayer Aspirin, Bayer claims that, because "[t]here are several products that *Bayer* considers to be 'Bayer Aspirin'" (Kloenne Decl. at 2, ¶ 4; emphasis added), the Complaint puts all of them in issue. As repeatedly noted above, however, "the plaintiff is the master of the complaint." *Bell*, 557 F.3d at 956. What matters is what the Complaint indicates that Yoffie means by the term, not Bayer's subjective interpretation.

In the district court, Defendant denied that it actually had a product called "Bayer Aspirin." (Appellee App'x at 59 ("there is no product named simply 'Bayer Aspirin.")). Apparently, the word "Genuine" on the package is not merely an advertising modifier as a consumer might reasonably believe; it is part of the product's formal name (see *id.*, n. 4; but does any consumer ever really use the term "Genuine Bayer Aspirin" when talking about this product?). Nevertheless, it was clear to the district court that the item with the name "Genuine Bayer Aspirin" was what Plaintiff had put in issue. (Addendum at A-10). That conclusion is undeniable based on the definition of Bayer Aspirin in Paragraph 3 of the Yoffie Complaint. (App'x at 121, ¶ 3).

Appellate Case: 13-1996     Page: 40     Date Filed: 06/12/2013 Entry ID: 4044390

The fact is that Ms. Yoffie's definition matches what the *wonderdrug.com* website, which Bayer cited to the court, says for "Genuine Bayer Aspirin." (Appellee App'x at 77). Bayer never showed such a match for any other product that Mr. Kloenne included in his retail sales numbers. In this court, Bayer points out in a footnote that one other product, "Bayer Plus," has uses that match the definition. (Appellants' Brief at 28 n. 7). In fact, *Plaintiff* mentioned that to the district court but pointed out that Bayer Plus "could hardly be thought to be the same thing as Bayer Aspirin, since it doesn't even have 'Aspirin' in its name." (Appellee App'x at 8)*.*

But even if Plaintiff had inadvertently put Bayer Plus in issue, that hardly brings in all of Bayer's other aspirin products, none of which match the Complaint's definition. Bayer specifically pointed the district court to "Full Dose (325 mg) Safety Coated Bayer Aspirin," "Low Dose (81 mg) Safety Coated Bayer Aspirin," and "Bayer Women's Low Dose Aspirin" as examples of the products that Mr. Kloenne included in his sales estimates. (Appellee App'x at 59, n. 4). According to *wonderdrug.com*, none of those products has uses that match the description in the Complaint, and the first two specifically contradict it. (Appellee App'x at 78). On those two products, the website states: "**Because of its delayed action, this product will not provide fast relief of headaches or other symptoms needing immediate relief**." (Appellee App'x at 78 (emphasis on

33

Bayer website)).  That clearly does not meet the definition in ¶ 3 of the Complaint, in which headache treatment is the first listed use.

Moreover, Mr. Kloenne stated that he had included "several Bayer Aspirin regimen products" in his totals.  It is illogical to consider these sales as "in controversy" because those products are medications taken, under a doctor's advice, on a daily basis.  (*See* definition of regimen in Merriam-Webster On-Line ("a systematic plan (as of diet, therapy, or medication) especially when designed to improve and maintain the health of a patient").  *http://www.merriam-webster.com/dictionary/regimen*).  No patient would have any regimen pills remaining after the expiration date unless he or she had stopped taking them for reasons other than its supposed expiration.

Nor do the two places where the Yoffie Complaint uses the term "Bayer Aspirin products" – compared to more than four dozen uses of just plain "Bayer Aspirin" – mean that she made a "post-removal attempt to defeat jurisdiction by redefining the scope of her complaint to a single product that the complaint never mentions."  (Appellants' Brief at p. 26).  Neither of those two uses of "Bayer Aspirin products" renders inoperative the definition in ¶ 3.  In one of them, ¶ 61, the phrase doesn't even refer to the product at issue.  (App'x at 136, Yoffie Complaint at ¶ 61).  The other, Paragraph (C) of the Prayer for Relief, simply asks, as part of requested injunctive relief, that Bayer provide accurate information, with

34

a use of the plural consistent with the definition of Bayer Aspirin in ¶ 3, since each package has a different "expiration date." (App'x at 143, Yoffie Complaint at Prayer). Noting in these two references alters the indisputable fact that Yoffie – the master of her complaint – defined the product at issue in a manner that does not apply to the bulk of products that Bayer included in its proof.

In sum, Bayer did not attempt to tie the sales numbers it presented to what the Complaint alleged as the product at issue. The district court correctly rejected this futile attempt to inflate the amount in controversy with irrelevant sales numbers. Therefore, the remand order as to Bayer should be affirmed.

## CONCLUSION

For the reasons stated above, the remand order appealed from should be affirmed in its entirety together with such other and further relief to Plaintiffs as this Court deems just and proper.

Dated:  June 11, 2013

Respectfully Submitted,

LAW OFFICE OF RICHARD S. CORNFELD

By:  /s/ Richard S. Cornfeld
       1010 Market Street, Suite 1605
       St. Louis, MO 63101
       Phone:      (314) 241-5799
       Facsimile:  (314) 241-5788
       *Attorney for Plaintiffs-Appellees*

35

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 8,225 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2007 in Times New Roman 14 point font, which is no more than 14,000 words permitted under Fed.R.App.P. 32(a)(7)(B)(i).

Dated: June 11, 2013.

/s/ Richard S. Cornfeld

Appellate Case: 13-1996    Page: 44    Date Filed: 06/12/2013 Entry ID: 4044390

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to

Circuit Rule 28A(h), a version of the brief in non-scanned PDF format.  I hereby

certify that the file has been scanned for viruses and that it is virus-free.

/s/ Richard S. Cornfeld

37

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 11, 2013, an electronic copy of the Brief of Appellees Daniel Raskas, Marjie Levy & Leslie Yoffie was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system:

Dan Ball
Christopher J. Schmidt
Thomas Walsh
BRYAN & CAVE
3600 One Metropolitan Square
211 N. Broadway
Saint Louis, MO 63102-2186

Steve Brody
O'MELVENY & MYERS
1625 Eye Street, N.W.
Washington, DC 20006-4001

Terry Lueckenhoff
FOX & GALVIN
12th Floor
One S. Memorial Drive
Saint Louis, MO 63102-0000

Shaun Paisley
Robyn Eileen Bladow
KIRKLAND & ELLIS
29th Floor
333 S. Hope Street
Los Angeles, CA 90071

Eugene A. Schoon
Elizabeth M. Chiarello
SIDLEY & AUSTIN
One S. Dearborn Street, Suite 2800
Chicago, IL 60603-0000

Douglas B. Maddock Jr.
James Patrick Muehlberger
SHOOK & HARDY
2555 Grand Boulevard
Kansas City, MO 64108-2613

/s/ Richard S. Cornfeld

38