# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE EIGHTH CIRCUIT

---

## No. 13-1996

---

DANIEL RASKAS,

*Plaintiff-Appellee,*

v.

JOHNSON & JOHNSON, ET AL.,

*Defendants-Appellants.*

---

MARJIE LEVY,

*Plaintiff-Appellee,*

v.

PFIZER INC.,

*Defendant-Appellant.*

---

LESLIE YOFFIE,

*Plaintiff-Appellee,*

v.

BAYER HEALTHCARE, LLC,

*Defendant-Appellant.*

---

Appeal from the United States District Court
For the Eastern District of Missouri
(4:12-cv-02174-JCH)
(4:12-cv-02266-HEA)
(4:12-cv-02307-CDP)

---

## REPLY BRIEF FOR APPELLANTS

---

Thomas C. Walsh
Dan H. Ball
Christopher J. Schmidt
BRYAN CAVE LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Counsel for Johnson & Johnson and McNeil-PPC, Inc.*
*Defendants-Appellants*

Robyn E. Bladow
Shaun Paisley
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

James P. Muehlberger
Douglas B. Maddock, Jr.
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Pfizer Inc.*
*Defendant-Appellant*

Eugene A. Schoon
Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Terry Lueckenhoff
FOX GALVIN, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
Telephone: (314) 588-7000
Facsimile: (314) 588-1965

*Counsel for Bayer Healthcare, LLC*
*Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT .......................................................................................3

    A.    Plaintiffs' Arguments Distort Applicable Eighth Circuit Removal Standards, And The Correct Standards, Properly Applied, Require The District Court To Exercise Jurisdiction.............3

    B.    Plaintiffs Misstate The Decisions From Other Circuits, Which Either Support Reversal Here Or Involved Different Issues. .............10

    C.    Contrary To Plaintiffs' Assertions, The District Court's Order Frustrates CAFA's Intent By Ensuring Plaintiffs A State Court Forum For Key Decisions In High-Stakes Class Actions...................14

    D.    Plaintiffs' Evidentiary Objections Are Meritless And Do Not Provide An Alternative Basis On Which To Affirm The District Court's Remand Orders.......................................................18

    E.    Yoffie Put All "Bayer Aspirin" Products At Issue In Her Complaint, And The District Court Erred By Permitting Yoffie To Narrow Her Complaint Post-Removal...........................................23

CONCLUSION ...................................................................................26

CERTIFICATE OF COMPLIANCE...................................................................28

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arnold v. AT&T, Inc.*,
  874 F. Supp. 2d 825 (E.D. Mo. 2012) ..................................................21

*Back Doctors Ltd. v. Met. Prop. & Cas. Ins. Co.*,
  637 F.3d 827 (7th Cir. 2011) ..................................................................9

*Bartnikowski v. NVR, Inc.*,
  307 F. App'x 730 (4th Cir. 2009) ..........................................................12

*Berniard v. Dow Chemical*,
  481 F. App'x 859 (5th Cir. 2010) ..........................................................13

*Blanche Rd. Corp. v. Bensalem Twp.*,
  1996 WL 368347 (E.D. Pa. June 25, 1996) ...........................................21

*Brill v. Countrywide Home Loans, Inc.*,
  427 F.3d 446 (7th Cir. 2005) ................................................. 4, 5, 8, 14

*Clark v. Matthews Int'l Corp.*,
  639 F.3d 391 (8th Cir. 2011) ..................................................................7

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) .....................................................................1, 15

*DiTolla v. Doral Dental IPA of N.Y., LLC*,
  469 F.3d 271 (2d Cir. 2006) ........................................................... 11, 12

*Giannini v. Nw. Mut. Life Ins. Co.*,
  2012 WL 1535196 (N.D. Cal. Apr. 30, 2012) .......................................21

*Hargis v. Access Capital Funding, LLC*,
  674 F.3d 783 (8th Cir. 2012) ................................................................25

*Hartis v. Chicago Title Ins. Co.*,
  694 F.3d 935 (8th Cir. 2012) ...................................................... passim

*In re Northgate Comp. Sys., Inc.*,
  240 B.R. 328 (D. Minn. 1999) ..............................................................22

Appellate Case: 13-1996   Page: 4   Date Filed: 06/18/2013 Entry ID: 4046031

*Junk v. Terminix Int'l Co.*,
  628 F.3d 439 (8th Cir. 2010) ...................................................................7

*Lewis* v. *Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) ........................................................ passim

*Miedema v. Maytag Corp.*,
  450 F.3d 1322 (11th Cir. 2006) .............................................................13

*Quinn v. Ocwen Fed. Bank FSB*,
  470 F.3d 1240 (8th Cir. 2006) ...............................................................17

*Ray v. Wells Fargo Bank, N.A.*,
  2011 WL 1790123 (C.D. Cal. May 9, 2011) .........................................22

*Spivey v. Vertrue*,
  2008 WL 961561 (S.D. Ill. Apr. 8, 2008) ..............................................11

*Spivey v. Vertrue, Inc.*,
  528 F.3d 982 (7th Cir. 2008) ........................................................ passim

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ...............................................................................25

*U.S. v. Woods*,
  321 F.3d 361 (3d. Cir. 2003) .................................................................21

*Zunamon v. Brown*,
  418 F.2d 883 (8th Cir. 1969) .................................................................18

**Rules**

Fed. R. Civ. P. 23(f) ...................................................................................16

Fed. R. Evid. 803(17) .................................................................................21

Fed. R. Evid. 803(6) ...................................................................................20

Fed. R. Evid. 807 ......................................................................... 21, 22, 23

iii

# INTRODUCTION

Defendants did what they were required to do to establish federal jurisdiction under the Class Action Fairness Act ("CAFA"): they showed minimal diversity, the existence of more than 100 members of the putative class, and that the stakes of each of the lawsuits exceeded $5 million. Indeed, out of the tens of millions of dollars of retail sales of medication defendants identified in their notices of removal, plaintiffs have still yet to point to a single sale (or dollar or pill) that is not put "in controversy" by their complaints. But even though the "pot" of money defendants have shown to be in controversy far exceeds the CAFA jurisdictional threshold, plaintiffs insist that they can successfully evade removal simply through an empty assertion that the amount in controversy is really some unspecified lesser amount. Just as the Seventh and Ninth Circuits in *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008), and *Lewis* v. *Verizon Communications, Inc.*, 627 F.3d 395 (9th Cir. 2010) did when faced with the same question on similar facts, this Court should reject that argument and reverse the district court's remand order.

Plaintiffs nevertheless argue that the district court correctly required defendants to devise a "formula" to calculate plaintiffs' classwide damages in order to remove. But it is undisputed that this burden properly belongs to *plaintiffs* at the class certification stage. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433

1

(2013).  Nor do plaintiffs dispute that it was not just difficult, but impossible, for defendants to come up with that calculation here.

To argue that defendants in the Eighth Circuit are required to meet impossible burdens to remove, plaintiffs distort the applicable standards.  They claim, for example, that removing defendants are required to present evidence of plaintiffs' classwide damages that would suffice as proof of damages at trial, a proposition that is refuted by the same cases plaintiffs cite.  They contend that any "doubt" about the amount in controversy at the removal stage must result in remand, a rule that would render the other removal standards this Court routinely applies redundant.  And they argue that this Court's statement that the burden on removing defendants is a "pleading burden, not a demand for proof" does not actually mean what it says.

Moreover, while plaintiffs seem to believe that the district court's order is consistent with CAFA, it in fact frustrates one of CAFA's central purposes:  to ensure that federal courts are making class certification determinations in high-stakes class actions.  The unintended consequence of the district court's remand order is that in cases where plaintiffs assert a claim for classwide damages that could never be established by common proof—and that should therefore never be certified under the rigorous class certification requirements of the federal rules—federal courts will be placed off-limits.

Appellate Case: 13-1996     Page: 7     Date Filed: 06/18/2013 Entry ID: 4046031

Plaintiffs also invite this court to affirm the district court's remand order on an alternative basis: that some of the retail sales figures presented by defendants amount to inadmissible hearsay. Plaintiffs' hearsay arguments are meritless—the sales figures plaintiffs challenge as inadmissible are accurate and reliable, and fit within several hearsay exceptions. In any event, because plaintiffs do not challenge additional sales figures provided to the district court in support of removal, a ruling on plaintiffs' current hearsay objection is meaningless because there is alternative evidence that serves to establish jurisdiction for certain defendants.

Finally, with respect to Bayer, plaintiff Yoffie's argument that she should be permitted to limit her complaint post-removal to "Genuine Bayer Aspirin," a product never mentioned in her complaint, runs afoul of Supreme Court and Eighth Circuit precedent.

The district court's remand order should be reversed.

## ARGUMENT

### A. Plaintiffs' Arguments Distort Applicable Eighth Circuit Removal Standards, And The Correct Standards, Properly Applied, Require The District Court To Exercise Jurisdiction.

Rather than allowing defendants to satisfy their initial removal burden by presenting an estimate of the amount "in controversy" at the time of removal, the court below concluded that defendants were required to come forward with a

3

"formula" to calculate plaintiffs' classwide damages. Adden. at 8. As the court acknowledged, plaintiffs themselves were "unaware" of any such "formula," and defendants contend that there is no way to ascertain membership in plaintiffs' proposed classes or to calculate damages on a classwide basis. *Id.* Thus, the district court determined in effect that, by pleading an unascertainable class, plaintiffs had successfully rendered their lawsuits unremovable—even though it is indisputable that each of the lawsuits exposes each defendant to liability well in excess of $5 million. While plaintiffs claim that Eighth Circuit precedent dictates this result, their argument muddles and distorts a number of Eighth Circuit removal standards.

First, plaintiffs cite language from *Hartis v. Chicago Title Insurance Co.*, 694 F.3d 935, 944 (8th Cir. 2012), stating that removing defendants must show "not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands," and that "[t]he demonstration concerns what plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Hartis*, 694 F.3d at 945 (quoting *Spivey*, 528 F.3d at 986, quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)).

Based on this quoted language, plaintiffs contend that defendants have not shown what the "stakes . . . *are* given the plaintiff's actual demands" because their

4

complaints seek recovery of only an unspecified portion of the retail sales amounts defendants presented. Appellees' Br. at 11-12. In arguing that defendants' showing of what is "in controversy" is "exaggerate[d]" (*id.*), plaintiffs do not dispute that they have never been able to eliminate a single purchase of the subject medication from the amounts that defendants identified in their notices of removal. Nonetheless, according to plaintiffs, *Hartis* requires defendants to present evidence of plaintiffs' classwide damages that equates to the evidence that plaintiffs themselves would present at trial. Appellees' Br. at 17-18. They argue that "[i]f Plaintiffs presented only evidence of retail sales totals, they could not prevail at trial because, as alleged in their Complaints, their damages are only the subject medications that were discarded because of Defendants' schemes." *Id.*

But the notion that, in order to establish the amount in controversy, removing defendants must present evidence that plaintiffs themselves could in turn use to prove damages at trial is refuted by the same cases plaintiffs rely upon. *Hartis*, *Spivey*, and *Brill* all make clear that the burden imposed on removing defendants is to present a prospective estimate of the stakes involved in the lawsuit, not to present proof of damages that plaintiffs could then use at trial. *See Hartis*, 694 F.3d at 945 (noting that "[d]iscovery and trial come later") (quoting *Spivey*, 528 F.3d at 986); *Brill*, 427 F.3d at 449 (rejecting proposition "that a removing litigant must produce 'evidence . . . that a favorable judgment will award

5

Plaintiff' more than the jurisdictional minimum" because "suits are removed on the pleadings, long before 'evidence' or 'proof' have been adduced").

Indeed, if plaintiffs' proposed rule were actually correct, each of these cases (in which the courts all concluded that they had CAFA jurisdiction) should have been remanded to state court. This Court in *Hartis*, for example, found the amount in controversy satisfied by making calculations based on ballpark estimates that could never have been used to satisfy the *Hartis* plaintiffs' burden at trial. *Hartis*, 694 F.3d at 945-46. Instead, this Court recognized that "[d]iscovery and trial" come later, and that defendants need only show at the removal stage that the jury eventually "*might* legally conclude" that plaintiffs would be entitled to relief in excess of $5 million. *Id.* at 944-45.

Similarly, in *Spivey*, 528 F.3d at 986, the plaintiff could not have prevailed at trial by merely presenting a jury with evidence that there was $7 million worth of total billings, because plaintiff's complaint sought to recover only the portion of the billings that was "unauthorized." *Id.* at 985-86. Discovery and trial might ultimately have shown that that the subset of charges that were "unauthorized" was much less than $5 million (or even zero), but in order to remove, the defendant only had to show what was "in controversy" at the time of removal. *Id.* Likewise here, it is possible that individualized inquiry may later show that certain purchasers do not meet plaintiffs' class definition or that some portion of the five-

6

year product sales is not at issue. But contrary to plaintiffs' argument, there is no requirement that defendants present trial-ready proof of plaintiffs' own damages in order to avail themselves of a federal forum.

Second, plaintiffs repeatedly cite language from Eighth Circuit cases stating that "all doubts" about jurisdiction should be resolved in favor of remand (Appellees' Br. at 11, 12, 15), as if that means that the existence of any question about the relief sought by the plaintiff ends the jurisdictional inquiry. But while this Court has used the "all doubts" language to resolve ambiguities in pleadings in favor of remand (*see, e.g., Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446-47 (8th Cir. 2010)), it has never used that language to require defendants to establish that the amount in controversy exceeds the jurisdictional threshold beyond "all doubt."

Indeed, any such requirement would swallow this circuit's standards for determining whether the amount in controversy threshold is met—namely that defendants' burden is a "pleading requirement, not a demand for proof" and that disputed jurisdictional facts must be established by a "preponderance of the evidence." *Hartis*, 694 F.3d at 945-46. This Court confirmed as much in *Clark v. Matthews Int'l Corp.*, 639 F.3d 391 (8th Cir. 2011), when it determined that it had diversity jurisdiction even though the amount in controversy was "not free from doubt," because the removing defendant had carried its burden of showing the amount in controversy by a preponderance of the evidence. *Id.* at 397.

7

Third, while acknowledging that this Court in *Hartis* described defendants' initial removal burden as a "pleading requirement, not a demand for proof," plaintiffs contend that defendants still must do more than simply "plead" or "allege" the amount in controversy. Appellees' Br. at 12. Instead, according to plaintiffs, the phrase means "the court must scrutinize the *plaintiff's* pleading to determine what is actually at stake in the litigation." *Id.* Plaintiffs do not explain why they believe *Hartis*'s "pleading requirement" is limited to reviewing the plaintiff's complaint (rather than the defendant's notice of removal), nor do they offer any explanation as to what the words "not a demand for proof" mean, ignoring them entirely.

Plaintiffs' proffered "interpretation" of the *Hartis* "pleading requirement" is wrong. The Seventh Circuit, in a series of decisions, has explained how to apply the "pleading requirement, not a demand for proof" standard adopted in *Hartis*. Where, as here, the complaint is silent as to the amount in controversy, the Seventh Circuit has rejected the idea, advanced by plaintiffs, that a removing defendant needs to present "'competent proof to establish' that the statutory threshold has been exceeded," recognizing that "suits are removed on the pleadings, long before 'evidence' or 'proof' have been adduced." *Brill*, 427 F.3d at 448. Rather, a defendant's notice of removal "serves the same function as the complaint would in a suit filed in federal court" (*id.* at 449) and must therefore "explain[] plausibly

8

how the stakes exceed $5 million." *Spivey*, 528 F.3d at 986. To the extent any jurisdictional facts—"such as which state issued a party's certificate of incorporation, or where a corporation's headquarters are located"—are contested, those facts must be established by a preponderance of the evidence. *Back Doctors Ltd. v. Met. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 829-30 (7th Cir. 2011). Once the removing defendant meets its initial pleading burden, however, the burden then shifts to the plaintiff, who, in order to obtain remand, must establish that it is legally impossible for the plaintiff to recover more than $5 million. *Id.*

Under the correct Eighth Circuit standards, defendants carried their burden. They not only "described" how the amount "in controversy" exceeded $5 million, but supplied evidence establishing the sales figures for the products at issue. *See* Apdx. at 24, 71, 115. At that point, the burden should have shifted, and plaintiffs, in order to obtain remand, should have been required to "establish to a legal certainty that the claim is for less than the requisite amount." *Hartis*, 694 F.3d at 946 (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)). At no point did plaintiffs even argue that their claims were worth $5 million or less, much less try to establish that recovering more than $5 million was legally impossible.

Accordingly, the district court has CAFA jurisdiction, and the remand order should be reversed.

Appellate Case: 13-1996     Page: 14     Date Filed: 06/18/2013 Entry ID: 4046031

### B. Plaintiffs Misstate The Decisions From Other Circuits, Which Either Support Reversal Here Or Involved Different Issues.

As defendants explained in their opening brief, both the Seventh Circuit and Ninth Circuit have addressed CAFA removal standards under nearly identical circumstances to those here. Appellants' Br. at 18-22. In both *Spivey* and *Lewis*, the courts concluded that defendants met their initial burden with respect to the amount in controversy by presenting evidence of the total billings for the types of services targeted by the complaint. *Spivey*, 528 F.3d at 985-86; *Lewis*, 627 F.3d at 399-400. These amounts did not actually represent the amount of damages that plaintiffs would ultimately seek at trial, because the plaintiffs only sought the subset of these total charges that they contended were "unauthorized." *Id.* But the Seventh and Ninth Circuits—applying standards that this Court later cited approvingly in *Hartis*, 694 F.3d at 944-45, 946—rejected plaintiffs' arguments that the amount in controversy defendants had identified was over-inclusive, because the total billings represented the amount that was "in controversy" at the time of removal. *Spivey*, 528 F.3d at 985-86; *Lewis*, 627 F.3d at 399-400.

Even though *Spivey* and *Lewis* are directly on point, plaintiffs claim that defendants' reliance on these cases is "misplaced" because they are factually distinguishable. Appellees' Br. at 24. To make that argument, plaintiffs resort to misstating the holdings in both cases. They suggest that the *Spivey* and *Lewis* courts concluded that plaintiffs were seeking refunds of ***all*** of the charges

10

defendants identified in their notices of removal. *See id.* at 24-25. But the plaintiffs in *Spivey* and *Lewis* in fact made the same argument plaintiffs now ask this Court to accept: that they did ***not*** seek recovery of all of the charges defendants set forth as "in controversy," and that defendants were thus required to come forward with evidence of how many charges were "unauthorized" in order to remove. *See* Appellants' Br. at 18-20 (citing *Spivey v. Vertrue*, 2008 WL 961561, at *2 (S.D. Ill. Apr. 8, 2008); *Lewis*, 627 F.3d at 399-400). The courts flatly rejected that argument. *Id.* Rather than confront this adverse and on-point precedent directly, plaintiffs proceed instead with their own selective (and inaccurate) reading of these cases. *Spivey* and *Lewis* are in fact indistinguishable from this case. This Court should reach the same result as the Seventh and Ninth Circuits did, and reverse the district court's remand order.

Plaintiffs also point to four decisions from other federal courts of appeals that they claim support the district court's remand orders. *See* Appellees' Br. at 27-28. But not one of those decisions actually addressed the question faced by the Court here. *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271 (2d Cir. 2006), for example, involved a plaintiff who sought an accounting of amounts by which a Medicare- and Medicaid-funded reimbursement pool had been funded and reduced. *Id.* at 272. The amount of the total pool was $40 million. *Id.* There, however, the plaintiff's lawsuit sought *only* an accounting, and did not "lay claim"

11

to *any* of the funds in the pool. *Id.* at 276. Accordingly, the Second Circuit rejected the defendants' argument that the entire amount of the pool was "in controversy." *Id.* While the plaintiff might later have sought to recover some amount from the pool contingent on the outcome of the accounting, such a claim was not "in controversy" at the time of removal. *Id.* Given that plaintiffs here admittedly do "lay claim" to the retail sales defendants identified, the accounting action in *DiTolla* provides no support for the district court's decision.

The other three cases plaintiffs cite are also inapposite, involving situations where the removing defendants did not provide reliable estimates of the amount of money that was in controversy. In the unpublished decision, *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730 (4th Cir. 2009), the plaintiffs sought unpaid overtime compensation on behalf of a class, and the defendant employer claimed the amount in controversy was satisfied based on the assumption that each class member was claiming five hours of overtime per week. *Id.* at 735. The court, however, affirmed the district court's remand order because the defendant's assumption was "wholly unsupported," and was based solely upon "vague references" made by a named plaintiff in a different lawsuit about working fifteen hours of overtime a week. *Id.* at 735-36. Not only was there no indication that this other plaintiff was representative of the employee class, but the defendant had also misstated what this other plaintiff said about the amount of overtime he worked. *Id.*

12

In *Berniard v. Dow Chemical Co.*, 481 F. App'x 859 (5th Cir. 2010), another unpublished opinion, the plaintiffs sought damages on a classwide basis resulting from the defendant's release of a potentially noxious chemical. *Id.* at 861. The defendant sought to establish that the amount in controversy met the jurisdictional threshold by estimating the geographic reach of the chemical exposure to determine how many people might be in the affected population, and by pointing to the dollar amounts of recoveries in other, unrelated cases with similar facts. *Id.* at 863-64. The court deemed this showing "speculative" and remanded. *Id.* at 863.

And in *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006), the Eleventh Circuit concluded that the number of retail sales the defendant manufacturer presented to support its amount in controversy calculation was not reliable. Rather than using actual retail sales data (like defendants did here), Maytag extrapolated the number of retail sales from the number of product registrations. *Id.* at 1331-32. On that basis, the court determined that the defendant had not satisfied its initial burden. *Id.*

In sum, none of these four cases plaintiffs rely upon addressed the question now before this Court: whether, when removing defendants demonstrate that a certain amount of money is "in controversy," plaintiffs can evade jurisdiction

13

merely by asserting that they seek some unspecified portion of that amount.[1]  The

only federal Courts of Appeals to have addressed this issue directly are the Seventh

Circuit in *Spivey* and the Ninth Circuit in *Lewis*.  This Court should reach the same

result as those courts and conclude that all of the retail sales of the subject

medications are "in controversy," and that plaintiffs' arguments that they are

seeking some unspecified portion of that amount of money do not defeat CAFA

jurisdiction.

### C. Contrary To Plaintiffs' Assertions, The District Court's Order Frustrates CAFA's Intent By Ensuring Plaintiffs A State Court Forum For Key Decisions In High-Stakes Class Actions.

Plaintiffs contend that allowing them to evade jurisdiction simply by

labeling defendants' amount in controversy evidence "over-inclusive" does not

contravene the purposes of CAFA.  Appellees' Br. at 28-30.  But the undisputed

purpose of CAFA was to expand federal jurisdiction over high-stakes class actions

(*see* Appellants' Br. at 9, 23), and the district court's decision makes it difficult or

---

[1] Plaintiffs contend that the position taken by defendants here (and adopted by the courts in *Spivey* and *Lewis*) is "akin to an argument that one could establish the jurisdictional amount in a 'lost profits' case by showing only the lost revenues, but not going the second step to show the amount of profits that were lost."  Appellees' Br. at 16.  It is not.  In that hypothetical case, the removing defendant who presented revenue numbers, when the complaint only put profit at issue, would not be presenting a good faith estimate of the stakes because it would have information under its control showing that the amount "in controversy" is less.  *See generally Brill*, 427 F.3d at 447-48 ("When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information—so that the choice between state and federal court may be made accurately—is much to be desired.").

14

impossible for defendants to exercise their removal rights. The district court's decision requires defendants at the removal stage to delve into the merits of the dispute, and try to come up with a "formula" by which plaintiffs' classwide damages could be calculated.[2] That shifts to defendants the burden of showing that damages can be established through common proof, a burden that properly belongs to plaintiffs at the class certification stage. *See Behrend*, 133 S. Ct. at 1433. In cases like this one, where one of the principal defenses to class certification will be that there is no viable way to ascertain membership in the class or to calculate damages through common proof, defendants are effectively foreclosed from removing under CAFA.

Plaintiffs suggest that placing this insurmountable burden on removing defendants is not problematic because it does not "foreclose[] Defendants from later contesting damages." Appellees' Br. at 29. But it is not that defendants are prevented from mounting any kind of defense to damages; it is that they are either

---

[2] As defendants have noted, this burden was an impossible one to meet here. While plaintiffs' counsel stated at the hearing on the remand motion (and plaintiffs repeat in their brief) that classwide damages could potentially be proven by some undefined "modeling" or "consumer surveys" (Apdx. at 193-95, 236; Appellees' Br. at 30), neither plaintiffs nor the district court has ever identified any feasible way to calculate classwide damages, short of millions of individual inquiries. In any event, even if some kind of modeling or survey were a viable option for plaintiffs to satisfy their burden at class certification, it is not, and cannot be, removing defendants' obligation to devise and conduct a survey of putative class members in order to exercise their removal rights.

15

required to offer a method for calculating damages on a classwide basis (and thus put on part of plaintiffs' class certification case for them) or proceed in state court.

Plaintiffs also contend that CAFA is not undermined by adopting a "wait and see" approach and having this case proceed in state court until such time as they choose to disclose exactly how they intend to calculate classwide damages. Appellees' Br. at 28-29. But in most class actions, the question of whether a class will be certified is of considerable importance, with a decision to certify a class imposing settlement pressures on defendants. *See* Fed. R. Civ. P. 23(f) advisory committee's note (acknowledging that "[a]n order granting certification . . . may force a defendant to settle rather than incur the costs of defending a class action"). Indeed, the enactment of CAFA was driven in part by Congress's desire to see class certification decisions made in federal courts, rather than in state courts where they may certify classes more readily without rigorous analysis. *See, e.g.,* S. Rep. No. 109-14, at 4 (CAFA prevents lawyers from "gam[ing] the procedural rules [to] keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes"); *id.* at 22 (disapproving "the 'I never met a class action I didn't like' approach to class certification" that "is prevalent in state courts in some localities").

Defendants believe there are strong arguments here as to why plaintiffs' proposed classes cannot be certified, and they wish to have the class certification

16

determination made in federal court. But the perverse result of the district court's decision is that the more uncertifiable the class plaintiff proposes, the more likely it is that the class certification decision will be made in state court. If the proposed class is unascertainable and/or if damages cannot be established by common proof (both of which are true here), then defendants will never be able to come up with the supposedly-required "formula" to be able to remove.

In this case, the only way to determine which of the purchases, if any, fall outside plaintiffs' damages theory is through inquiries of the individual purchasers who bought defendants' products—precisely the type of individualized proof that makes certification of plaintiffs' proposed classes impossible. The fact that a proposed class is likely uncertifiable should not, however, foreclose defendants' ability to remove. Indeed, the point of CAFA was to ensure that federal courts could make these threshold class certification determinations—and, where appropriate, strike class allegations or deny class certification—in cases where the stakes were sufficiently high. Such is the case here. While individualized inquiry might reveal that some purchases should be excluded from the class, every purchase was in controversy at the time of removal (and remains in controversy now). *See Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1248 (8th Cir. 2006) ("Further, jurisdiction is determined at the time of removal, even though subsequent events may remove from the case the facts on which jurisdiction was

17

predicated."); *Zunamon v. Brown*, 418 F.2d 883, 887 (8th Cir. 1969) ("Jurisdiction is measured by the amount properly pleaded or as of the time of the suit, not by the end result.").

Once defendants established that plaintiffs had asserted claims that exposed them to more than $5 million in liability, they met their removal burden. By requiring defendants to do more, and to make out plaintiffs' class certification case for them, the district court's decision undermines the purposes of CAFA.

### D. Plaintiffs' Evidentiary Objections Are Meritless And Do Not Provide An Alternative Basis On Which To Affirm The District Court's Remand Orders.

The district court's decision should not be affirmed on plaintiffs' alternative argument that the lawsuits should have been remanded on the basis that the retail sales information defendants submitted with their notices of removal was inadmissible hearsay. Appellees' Br. at 18. The district court did not reach plaintiffs' hearsay objections, and assumed for purposes of deciding the remand motions that the sales information could be considered. Adden. at 6. In the event this Court decides to take up those objections in the first instance on appeal, they should be overruled.

Defendants all submitted sworn declarations from corporate employees with their removal papers, which served to confirm the sales figures related to the subject medications that defendants alleged in their notices of removal. Adden. at

18

30, 33, 37, 41; Apdx. at 56, 59, 105. Those declarations showed that plaintiffs' complaints each implicated millions of dollars of retail sales, and thus placed well over $5 million "in controversy." Because defendants are manufacturers and do not sell directly to consumers, they are not able to track retail sales at the consumer level. Each defendant therefore submitted retail sales projections obtained from data collected by SymphonyIRI Group ("IRI"), a company that tracks sales using scanners at checkouts in thousands of grocery, drug and other retail stores. Adden. at 32 ¶ 6, 38-39 ¶ 8 & 41 ¶ 3. In each case, there were millions of dollars in estimated retail sales in Missouri during the relevant period. *Id.* at 32 ¶ 5, 39 ¶ 9 & 42 ¶ 5.

In addition to this evidence, which in itself is sufficient to establish the amount in controversy as to each of the three defendants, Pfizer submitted sales figures that were reported to Pfizer by Wal-Mart through a database called Retail Link, which established that sales at Wal-Mart stores alone in Missouri could satisfy CAFA's jurisdictional minimum. *Id.* at 34-35 ¶¶ 4-5. Pfizer and McNeil-PPC also provided estimates based on the total amount of subject medication that was shipped to distribution centers and wholesalers in Missouri, which confirmed that millions of dollars in retail sales were at issue. *Id.* at 36 ¶ 7, 38 ¶ 6. Plaintiffs objected only to the admissibility of the figures based on sales data tracked by IRI

19

and Wal-Mart, and did not dispute the admissibility of defendants' wholesale sales data. *See* Appellees' Br. at 18-19.

In challenging the IRI and Wal-Mart figures as inadmissible, plaintiffs did not suggest that these data were somehow inaccurate or unreliable. Nor was there any reason to believe that. IRI's business is to provide accurate information analytics for consumer-packaged goods, retail, and healthcare companies in the United States and internationally, and defendants use and rely upon IRI data in their day-to-day business. *See* Adden. at 32 ¶ 6, 38-39 ¶ 8, 41-42 ¶ 3. Similarly, Pfizer obtains sales data from Wal-Mart on a regular basis, and relies upon its accuracy. *Id.* at 35 ¶ 6. Accordingly, plaintiffs' sole argument for their technical hearsay objection was that the IRI and Wal-Mart figures should be disregarded because, while the information was included in sworn declarations from defendants' employees who were familiar with the data, defendants did not attach documents reflecting the same information that was reported in the declarations. Appellees' Br. at 18-19.

But much like their attempt to defeat removal by claiming that defendants have not adequately established the amount in controversy, plaintiffs' hearsay objection asks this Court to impose an improper and heightened burden on defendants. The kind of sales data defendants presented is admissible under multiple hearsay exceptions—the business records exception (Fed. R. Evid.

Appellate Case: 13-1996    Page: 25    Date Filed: 06/18/2013 Entry ID: 4046031

803(6)), the market reports exception (Fed. R. Evid. 803(17)), and the residual hearsay exception (Fed. R. Evid. 807)—none of which requires defendants to present the data in an exhibit, rather than in the body of a sworn declaration.

Numerous courts have found that testimony can properly be founded upon the review of a market report or business record, even where the report or record itself is not presented to the court. *See U.S. v. Woods*, 321 F.3d 361, 365 (3d. Cir. 2003) (affirming district court's overruling of hearsay objection to witness testimony about contents of the National Insurance Crime Bureau's database because the database was generally relied upon by law enforcement, and therefore "precisely the type of evidence that Rule 803(17) envisions"); *Blanche Rd. Corp. v. Bensalem Twp.*, 1996 WL 368347, at *2 (E.D. Pa. June 25, 1996) ("chart reflecting . . . sales data was admissible under Rule 803(17)" because the "sales data [was] collected and published by [a] well-known . . . real estate firm . . . as a routine part of its business" and was "relied upon by valuation experts"); *Giannini v. Nw. Mut. Life Ins. Co.*, 2012 WL 1535196, at *2 n. 2 (N.D. Cal. Apr. 30, 2012) (rejecting argument that declaration summarizing contents of business records was inadmissible for failure to attach the actual records, and noting that "courts frequently accept declarations summarizing business records when analyzing a motion to remand under the preponderance standard"); *Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 832 (E.D. Mo. 2012) (relying on declarations that were based on

21

declarant's "personal knowledge, review of corporate and business records, and interviews with appropriately knowledgeable persons"); *see also Lewis*, 627 F.3d at 399 (defendant satisfied burden by "submitt[ing] an affidavit that its total billings for all [relevant] services in California exceeded $5 million," without attaching records confirming testimony); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011) (noting that "[t]here is no need, under the circumstances presented, for [the removing defendant] to provide the business records themselves").

The only case plaintiffs rely upon, *In re Northgate Computer Sys., Inc.*, 240 B.R. 328 (D. Minn. 1999) (cited at Appellees' Br. at 22), is a bankruptcy court decision that excluded on hearsay and other grounds a witness's general statement that a company's stock price "shot up" based on his "review of the financial pages." *Id.* at 354. In reaching that decision, the court stated in passing that the market reports "exception only saves the *original published form* from objection." *Id.* That statement finds no support in the text of Rule 803(17), and the court itself cites no case law or other authority. In sum, plaintiffs have cited no authority for their position that sworn testimony reporting data contained in a market quotation, list, or compilation should be considered inadmissible hearsay.[3]

---

[3] Even if regularly-reported retail sales figures were somehow not admissible under the business record and market report exceptions, they should be admitted under the residual hearsay exception. Fed. R. Evid. 807. There is no dispute that IRI and

Appellate Case: 13-1996    Page: 27    Date Filed: 06/18/2013 Entry ID: 4046031

Plaintiffs' alternative hearsay argument for affirming the remand order should be rejected.

### E. Yoffie Put All "Bayer Aspirin" Products At Issue In Her Complaint, And The District Court Erred By Permitting Yoffie To Narrow Her Complaint Post-Removal.

Bayer demonstrated in defendants' opening brief that the district court improperly rejected Bayer's showing on the amount in controversy because the court allowed Plaintiff Yoffie to narrow her complaint, post-removal, to a particular form of Bayer Aspirin. Appellants' Br. at 26-29. In response, plaintiffs contend that Yoffie's complaint is limited to Genuine Bayer Aspirin (not mentioned anywhere in the complaint) because of the way paragraph 3 defines "Bayer Aspirin." *See* Appellees' Br. at 31-35 (citing Apdx. at 122 ¶ 3).

Paragraph 3 defines "Bayer Aspirin" as an over-the-counter medication available "for minor temporary conditions like headaches, menstrual pain, minor pain of arthritis, muscle pain, pain and fever of colds, and toothache." Apdx. at

---

Wal-Mart's data are trustworthy, are offered as evidence of a material fact, and that admitting them would serve the purpose of the rules and interests of justice. Fed. R. Evid. 807 (a)(1)-(2), (4). Plaintiffs contend only that subsection (a)(3)—which requires that the evidence offered be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"—is not satisfied. Appellees' Br. at 23. That requirement is satisfied here, where the "other evidence" plaintiffs want defendants to present is just the same data they have already presented, but in the possession of third parties who consider the data proprietary. But, as with the rest of these evidentiary questions, any issue about the applicability of the residual hearsay exception is better resolved by the district court in the first instance.

Appellate Case: 13-1996    Page: 28    Date Filed: 06/18/2013 Entry ID: 4046031

122 ¶ 3.   This definition encompasses the full range of Bayer Aspirin products.

For instance:

- Bayer Aspirin Plus is "use[d] for the temporary relief of headache, menstrual pain, minor pain of arthritis, muscle pain, pain and fever of colds, toothache."
- Bayer PM is "for the temporary relief of occasional headache and minor aches and pains."
- Bayer Women's Low Dose Aspirin is "for the temporary relief of minor aches and pains."
- Low Dose Bayer Chewable Aspirin is "for the temporary relief of minor aches and pains."

*See* "Drug Facts PDFs" for each product at wonderdrug.com (Bayer's website).

The definition in Yoffie's complaint does nothing to exclude these or other Bayer

Aspirin products or otherwise limit the complaint to a particular form of Bayer

Aspirin.

Plaintiffs also argue that the declaration submitted by Bayer is deficient

because certain Bayer Aspirin products could not fall within the scope of Yoffie's

case.   They assert that "Bayer Plus" does not have "Aspirin" in its name.

Appellees' Br. at 33.   But the Bayer website refers to this product as "Extra

Strength   Bayer   Aspirin   Plus"   and   "Bayer   Aspirin   Plus."

wonderdrug.com/products/es/esbp.htm.[4]   Plaintiffs contend that two other Bayer

---

[4] Plaintiff cannot avoid the product descriptions on the Bayer website because her suit is premised on the claim that the "Frequently Asked Questions" ("FAQ") section of that website "misled customers into discarding Bayer Aspirin after its

Appellate Case: 13-1996      Page: 29      Date Filed: 06/18/2013 Entry ID: 4046031

Aspirin products do not fall within paragraph 3 because they have delayed mechanisms of action. Appellees' Br. at 33-34. But paragraph 3 says nothing about delayed-versus-immediate relief. Finally, plaintiffs assert that "several Bayer Aspirin regimen products" cannot be included in the case because they must have been taken daily under a doctor's advice and therefore no pills would have remained after the expiration date. *Id.* at 34. Plaintiffs' suppositions do nothing to exclude these medicines from the definition in paragraph 3 of Yoffie's complaint.

Ultimately, plaintiffs ask the Court to ignore that Yoffie's complaint does not mention "Genuine Bayer Aspirin" and instead refers to broadly-defined "Bayer Aspirin" and "Bayer Aspirin products" on the ground that Yoffie is "the master of her complaint." *See* Appellees' Br. at 34-35. But a plaintiff is not entitled to narrow the scope of a complaint after removal, as the district court allowed her to do here. *See* Adden. at 10 (relying on "arguments presented by the plaintiff" to determine product at issue); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789-90 (8th Cir. 2012). Because Yoffie's complaint is not limited to "Genuine Bayer Aspirin," the declaration Bayer submitted in support of removal properly demonstrates the amount in controversy and establishes federal jurisdiction.

---

stated expiration date." *See* Apdx. at 132-33 ¶¶ 47-49. The FAQ section pertains to the full line of "Bayer Aspirin." *See* wonderdrug.com/faq.htm.

Appellate Case: 13-1996    Page: 30    Date Filed: 06/18/2013 Entry ID: 4046031

## CONCLUSION

This Court should reverse the district court's remand order, and remand with instructions to exercise jurisdiction over these disputes.

Dated:  June 17, 2013

Respectfully submitted,

  /s/  *Thomas C. Walsh*
Thomas C. Walsh
Dan H. Ball
Christopher J. Schmidt
BRYAN CAVE LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020

Stephen D. Brody
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Counsel for Johnson & Johnson and*
*McNeil-PPC, Inc.*

26

Robyn E. Bladow
Shaun Paisley
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500

James P. Muehlberger
Douglas B. Maddock, Jr.
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri  64108
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547

*Counsel for Pfizer Inc.*

Eugene A. Schoon
Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

Terry Lueckenhoff
FOX GALVIN, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
Telephone:  (314) 588-7000
Facsimile:  (314) 588-1965

*Counsel for Bayer Healthcare, LLC*

Appellate Case: 13-1996   Page: 32   Date Filed: 06/18/2013 Entry ID: 4046031

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record hereby certifies that the foregoing brief was prepared using Microsoft Word 2007, in 14-point Times New Roman font and that it contains 6,222 words from the Introduction through the Conclusion as determined by the Microsoft Word word-counting system. I further certify that the electronic copies of the brief and addendum filed with the Court and served on all parties have been scanned for viruses and are virus-free.


_____/s/  *Thomas C. Walsh*_____

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2013, I electronically filed the foregoing Reply Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/     *Thomas C. Walsh*